[No. B204830. Second Dist., Div. Six. Mar. 17, 2009.]

NICHOLAS A. FRANKE, Plaintiff and Respondent, v.
BAM BUILDING COMPANY et al., Defendants and Appellants.

## COUNSEL

Norman Dowler, Richard M. Norman; Arnold, Bleuel, LaRochelle, Mathews & Zirbel and Matthew P. Guasco for Defendants and Appellants.

Hughes & Dunstan and Simon J. Dunstan for Plaintiff and Respondent.

## OPINION

**COFFEE, J.**—BAM Building Company, a general partnership, Michael T. Novick, Robert J. Novick (deceased), BAM Building, a California limited liability partnership, Michael Todd Novick Living Trust, and Novick Family Trust Number One dated June 4, 1982 (collectively, BAM), appeal from a judgment entered after a bench trial awarding Nicholas A. Franke $178,288.61 in his action against BAM for liability on an undertaking. The award included $82,535.27 for Franke's losses incurred in municipal and bankruptcy court actions resulting from BAM's efforts to enforce a judgment against a third party, prejudgment interest (Code Civ. Proc., § 720.260, subd. (c)(2)),[1] $39,270 in attorney's fees and $2,148.71 in costs as the prevailing party (ibid.).

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

BAM contends that Franke incurred no recoverable losses as a result of its enforcement proceedings because BAM's lien was invalid and its efforts to levy on a bankruptcy distribution were ineffective. BAM also challenges particular items of loss. BAM further contends that section 720.260 does not authorize an award of attorney's fees in this action. We reverse the award of attorney's fees in the amount of $39,270 and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, BAM, Franke and George Benjamin were each creditors of C.W. and Marlene Wilburn (the Wilburns). The Wilburns expected distribution on claims they were pursuing against a bankruptcy debtor, Noci Oro Corporation (the Wilburn distribution).[2] The competing claims of these creditors against the Wilburn distribution led to the current litigation.

BAM had a 1989 unsatisfied judgment against the Wilburns. Benjamin had a 1990 unsatisfied judgment against the Wilburns. In 1993, the Wilburns granted Franke, their bankruptcy attorney, a first priority lien against the Wilburn distribution to secure his fees.

In February 1996, the bankruptcy court approved a compromise allowing the Wilburns' $162,500 unsecured claim against Noci Oro. BAM received notice of the Wilburn compromise but did not object to it or appear at the approval hearing. The notice did not disclose Franke's lien. BAM chose not to oppose the compromise "and to utilize instead its state court judgments to levy upon the Wilburns."

In order to levy on the Wilburn distribution, BAM obtained a writ of execution against the Wilburns for $28,949.23 in the municipal court action.[3] On February 27, 1996, BAM levied on the Wilburn distribution by causing the sheriff to serve the writ of execution and a notice of levy on the bankruptcy trustee. Franke responded by filing a third party claim asserting that he had a priority lien against the Wilburn distribution for $73,712.63 in fees currently owed him by the Wilburns plus future fees and interest. In order to prevent release of the funds pursuant to Franke's claim, BAM tendered an undertaking in the amount of $2,500 to indemnify Franke against losses he might "incur[] by reason of the enforcement proceedings" against the Wilburns. (§ 720.260.) At the time, that statute required an undertaking of "two thousand five hundred dollars ($2,500), or twice the amount of the

---

[2] Noci Oro was the Wilburns' closely held corporation. The Wilburns were not bankruptcy debtors.

[3] Upon consolidation of the courts, the Ventura Municipal Court case, *Novick v. Wilburn* (2001, No. MC089741), was reassigned to the Ventura County Superior Court. We nevertheless refer to the case throughout as the municipal court action for consistency.

execution lien . . . whichever is the lesser amount." Franke also tendered a statutory undertaking to indemnify BAM. (§ 720.630.)

Meanwhile, in the Noci Oro bankruptcy, the trustee acknowledged service of BAM's 1996 writ of execution. He also acknowledged notice of Franke's 1994 lien and notice of Benjamin's assignment of claim. The trustee did not immediately release any funds to the Wilburns. He requested letter briefs on the relative priorities of the three claims against the Wilburn distribution. The parties exchanged correspondence, and in August of 1996, the trustee gave notice of his intent to distribute the Wilburn distribution in the following priority: first to Benjamin, second to BAM and third to Franke.

In October 1996, in the municipal court, BAM's writ was returned "unsatisfied." In April 1997, Franke moved the municipal court for an order recognizing the superiority of his claim and requiring BAM to indemnify Franke for losses incurred as a result of BAM's enforcement proceedings. (§ 720.260, subd. (c)(2).) The municipal court denied the motion, finding that it had "no jurisdiction to determine the issue of the priority of [Franke's] claim of lien, that issue already having been determined in the bankruptcy court. [¶] [Franke's] motion is denied."[4]

The United States Trustee's Office approved the trustee's proposed distribution and filed a final report on May 8, 1998, requesting bankruptcy court approval. In August of 2000, the bankruptcy court entered a formal order instructing the trustee to distribute first to Benjamin the full amount necessary to satisfy his claim, and to distribute the remainder between Franke (68 percent) and BAM (32 percent). In June 2000, the trustee distributed funds to BAM, before the court had issued its formal order.

Franke successfully appealed the order of the bankruptcy court to the bankruptcy appellate panel of the Ninth Circuit Court of Appeal. In July 2001, the panel remanded the matter to the bankruptcy court with directions to award Franke the full Wilburn distribution, and to distribute nothing to BAM or Benjamin.

Franke again moved the municipal court for an order determining that his lien was senior to BAM's and requiring BAM to pay Franke's losses incurred as a result of the enforcement proceedings. The court denied the motion "without prejudice" pending a priority decision by the bankruptcy court on remand.

On remand, the bankruptcy court ordered BAM to disgorge the prior distribution, which it did, and the court ordered the trustee to pay the full

---

[4] In fact, the issue had not yet been determined by the bankruptcy court.

Wilburn distribution to Franke. Franke received that distribution in the amount of $69,036.83 on November 21, 2001. Benjamin and BAM received nothing. Franke had incurred $1,907.88 in fees and costs in the municipal court enforcement proceedings, and he incurred $33,898.48 in attorney's fees and costs in the bankruptcy priority litigation from the date of BAM's levy on the Wilburn distribution.

In 2005, Franke filed this action for liability on the undertaking against BAM to collect his losses incurred as a result of BAM's enforcement actions, pursuant to section 996.430, subdivision (a). The parties waived jury. They stipulated to many facts concerning the procedural history in the municipal court and bankruptcy court actions. Other facts remained in dispute, including the nature and extent of Franke's losses resulting from BAM's enforcement action. Franke sought recovery of all his expenses for litigating his priority claims in both municipal court and bankruptcy court, and sought compensation for the delay in distribution and the reduction in distribution that resulted from the bankruptcy trustee hiring additional counsel to handle BAM's lien claim. BAM argued that its lien was invalid or released, and that because there was no wrongful attachment, Franke had incurred no recoverable losses. Alternatively BAM argued that Franke's losses should be limited to the amount incurred in the municipal court enforcement proceeding itself and that his other claimed losses were not supported by the evidence.

At trial, Franke testified on his own behalf. Without objection from BAM, the court approved Franke as an expert witness in both bankruptcy and finance, based on his education and experience as an attorney with a certified specialty in bankruptcy and an MBA in corporate financial management.[5] Franke also presented the adverse testimony of BAM's principal, Michael T. Novick, and the testimony of BAM's bankruptcy priority attorney, Thomas Hinshaw. BAM called one witness: counsel for the bankruptcy trustee, William E. Winfield. BAM did not present any expert testimony.

At the close of evidence, the trial court determined that BAM was liable on its undertaking to Franke for all losses incurred as a result of BAM's enforcement proceedings pursuant to section 720.260, subdivision (c)(2) (resulting losses), and that the amount of Franke's resulting losses was $127,021.50, including his expenses incurred in the bankruptcy priority litigation. The court set forth its factual findings in a written statement of

---

[5] BAM did not object to Franke's expert qualifications. BAM did move in limine to preclude Franke from offering legal opinions with respect to such things as interpretation of statutes or the legal validity of the lien. The court declined to rule on the issue in limine, determining that the issue should instead be raised by specific objection "on a question and answer basis" and refusing a standing objection. BAM did not make specific objections to Franke's expert testimony concerning bankruptcy administration and the handling of bankruptcy claims. BAM's single objection to a legal opinion was sustained.

decision prepared by Franke and objected to by BAM. The court subsequently awarded Franke $39,270 in fees and $2,148.71 in costs as the prevailing party in the action on the undertaking.

## DISCUSSION

■ When a creditor gives an undertaking to proceed with an enforcement action, the creditor indemnifies the secured party against any losses "incurred by reason of the enforcement proceedings." (§ 720.260, subd. (c)(2).) The secured party may recover its resulting losses summarily in the enforcement proceeding (§ 996.440, subd. (a)) or in a later civil action for liability on the undertaking (§ 996.430, subd. (a)) as Franke did here. We affirm the resulting losses determination because we find substantial evidence in the record to support the trial court's factual determination as to each item of resulting loss. We vacate the award of attorney's fees because it was not authorized by law.

### Standard of Review

We determine whether the trial court's factual findings were supported by substantial evidence and independently review its legal determinations. (*Lake v. Reed* (1997) 16 Cal.4th 448, 457 [65 Cal.Rptr.2d 860, 940 P.2d 311].) Thus, we independently review the trial court's legal determinations that the amount of the undertaking did not cap Franke's recoverable losses, the validity of BAM's lien was not necessary to Franke's recovery, and the fees and costs incurred in municipal court were not the only recoverable losses and failure to obtain summary relief there did not preclude Franke's recovery in this action. We review for substantial evidence the trial court's factual determination that Franke's resulting losses were $127,021.50 plus prejudgment interest. Finally, we independently review the legal question whether an award of attorney's fees to the prevailing party in this action on the undertaking was authorized by contract, statute or other law.

### (1) No Cap on Resulting Losses

We reject BAM's argument that the amount of the judgment should not have exceeded the amount of the $2,500 undertaking. We also reject BAM's argument that it limited its liability with language in its letter transmitting the undertaking to the sheriff.

■ The scope of BAM's liability on the undertaking is established by section 720.260, subdivision (c). It includes any losses "incurred by reason of the enforcement proceedings." The liability of a principal based on statute is not limited to the amount of the bond, except as otherwise provided by

statute. (§§ 996.470, subd. (a), 996.475; *Harris v. Northwestern National Ins. Co.* (1992) 6 Cal.App.4th 1061, 1065 [8 Cal.Rptr.2d 234].) No statute limits the liability of the principal to the amount of an undertaking posted pursuant to section 720.260. BAM's transmittal letter incorporated obsolete language of a predecessor statute, section 689. Former section 689 limited liability on an undertaking to losses incurred by reason of the officer's "seizing, taking, withholding or sale" of the levied property. Use of this outdated language did not absolve BAM of its liability under the current statute, section 720.260.

### (2) Validity of Lien

BAM argues that Franke did not incur any losses as a result of BAM's efforts to enforce the lien because the lien was invalid or expired or because BAM did not receive any money directly from the sheriff. We disagree.

■ The test for recovery under section 720.260 is not whether the creditor's lien was valid, but whether the secured party incurred losses as a result of the enforcement action. Whether or not the levy was actually valid, or created a valid lien, the only claim or interest BAM had against the bankruptcy distribution was by virtue of its claim that its levy resulted in a valid lien. BAM consistently took the position in the bankruptcy proceedings that its lien was valid and that enforcement entitled it to priority distribution. At trial, BAM's principal acknowledged bankruptcy court filings in which BAM asserted that its claim against the Wilburn distribution arose solely from the writ of execution and that its resulting lien against the distribution was valid. BAM's bankruptcy attorney advised the bankruptcy trustee that "BAM knew it had a means of collecting from the Wilburns by the writ served on the Trustee," and warned the trustee that distribution to Franke would reflect "cavalier disregard for the writ procedure" and would be at the trustee's "peril." BAM asserted in 2000 that "BAM does not contend that its judgment lien or the priority thereof arise in or under the Bankruptcy Code," and that "[o]nly after it appeared that the court would allow the Wilburn claim did it make legal or economic sense to attach it." Substantial evidence supported the trial court's determination that these enforcement efforts caused Franke to incur the awarded losses.

### (3) Municipal Court Enforcement Proceedings

■ BAM argues that Franke's resulting losses should be limited to the fees and costs he incurred litigating in municipal court. BAM argues that Franke's fees and costs incurred in the bankruptcy priority litigation are not recoverable as a matter of law because bankruptcy litigation does not constitute "the enforcement proceeding" within the meaning of section 720.260, subdivision (c)(2). The arguments overlook the plain language of the section 720.260, subdivision (c)(2), which authorizes recovery of any losses "incurred by reason of" the enforcement proceedings. Although predecessor

statutes used more limiting language,[6] neither the current statute nor case authority limits losses to those incurred "in" the enforcement proceedings. Franke's losses were not limited to his fees and costs incurred in municipal court.

BAM also contends that Franke should not be entitled to any damages because he did not prevail in the municipal court enforcement proceeding. We disagree. Franke's interest as a lienholder was not affected by his inability to obtain summary relief on the undertaking from the municipal court. The municipal court twice declined to consider Franke's request for resulting losses on the merits, pending resolution of the bankruptcy priority litigation. However, failure to obtain a determination of liability on the undertaking in a summary enforcement proceeding does not discharge the surety and the secured party may subsequently file a civil action on the undertaking. (§ 720.250, subd. (b); *Commercial Credit Plan, Inc. v. Gomez* (1969) 276 Cal.App.2d Supp. 831, 833–834 [80 Cal.Rptr. 534].) In *Commercial Credit Plan*, the secured party was entitled to bring an independent civil action for liability on the undertaking, notwithstanding the fact that he previously filed a third party claim in the related municipal court enforcement proceeding, where he failed to request a hearing or obtain any relief. In the absence of any determination on the merits in the municipal court, Franke was free to pursue damages in this independent action on the undertaking.

### (4) Particular Items of Resulting Loss

The trial court made factual determinations that Franke's losses incurred as a result of the enforcement proceedings consisted of: (i) $33,898.48 in attorney's fees incurred in the bankruptcy priority litigation; (ii) $2,008.35 in costs; (iii) $16,412.58 reduction in distribution; (iv) $30,215.86 value of delay in distribution; and (v) $54,435.10 prejudgment interest as of April 23, 2007. At trial, these losses were supported by substantial evidence consisting of stipulated facts, trial testimony and documentary evidence.

Although we independently review the application of a statute to undisputed facts (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212 [100 Cal.Rptr.2d 718]), here the parties disputed the amount of Franke's resulting losses. The parties stipulated to certain facts, including the amount Franke claimed he incurred in municipal court, but whether his other losses were incurred as a result of the enforcement proceedings was contested. Most of the evidence at trial was directed to this question. The trial court's resolution

---

[6] Former section 689b, repealed in 1983, provided that the undertaking "shall indemnify [the secured party] for the taking of the property against loss, liability, damages, costs and counsel fees." (Repealed by Stats. 1982, ch. 1364, § 1, p. 5070, eff. July 1, 1983.)

of the question was a factual determination. Therefore, we examine each item of loss in turn resolving all conflicts in the evidence and drawing all reasonable inferences in favor of the trial court's decision. We defer to the trial court unless the evidence is insufficient as a matter of law to sustain these factual findings. (*Ibid.*)

### (a)   $33,898.48 in Attorney's Fees and Costs in the Bankruptcy Priority Litigation

The trial court found that Franke paid an attorney, Simon J. Dunstan, $33,898.48 in fees and costs "to litigate the priority of his lien claim and [BAM's] levy and execution lien in the bankruptcy court." The finding was supported by Franke's testimony and records of payment to Dunstan. Substantial evidence supports the trial court's finding that Dunstan's fees were incurred by reason of the enforcement proceedings. Franke testified that before BAM initiated its municipal court enforcement proceedings, it had asserted no claim in bankruptcy court against the Wilburn distribution. Correspondence and pleadings from the bankruptcy priority litigation corroborated this testimony. Franke testified that after BAM attempted to levy on the Wilburn distribution, Franke retained Dunstan to handle the resulting priority litigation. Correspondence from the bankruptcy trustee demonstrated that the priority controversy arose upon the trustee's receipt of BAM's writ of execution. The trial court took judicial notice of documents that BAM submitted to the bankruptcy court and the bankruptcy appellate panel in which BAM asserted that its claim against the Wilburn distribution was based solely upon the lien that resulted from service of its writ of execution upon the bankruptcy trustee. This evidence supported a conclusion that, without service of the writ of execution, BAM's claim would not have been considered in the bankruptcy action and Franke would not have incurred Dunstan's fees.

BAM argues that Franke would have incurred Dunstan's fees in any event, because Franke litigated priority with respect to Benjamin's claim. Substantial evidence supported the court's contrary conclusion. Franke testified that if BAM had not claimed to have a lien on the Wilburn distribution, Franke would not have objected to the May 1998 final report, because Benjamin's claim was small; Franke was not sure of his priority position as to Benjamin; and Benjamin was willing to compromise his claim by sharing the distribution equally with Franke. The trial court found that "[a]lthough another creditor of the Wilburns (Benjamin) also claimed an interest in [the Wilburn distribution], the amount of Benjamin's claim was relatively small and could have been compromised. [Franke] would not have objected to the Final Report solely to contest Benjamin's position, but only objected to the Final

Report because of [BAM's] levy and execution lien. Benjamin therefore had no role in the bankruptcy trustee's delay in making the distribution to [Franke]."

### (b)   Municipal Court Costs

The trial court found that Franke incurred $1,174.95 in costs litigating the third party claim in municipal court between March 1996 and March 1997 and another $833.40 in out-of-pocket expenses after March 1997. These findings were supported by Franke's testimony and by invoices.

### (c)   $16,412.58 Reduction in Distribution

The trial court found that the amount available for distribution to Franke on the Wilburn claims was reduced by $16,412.58 (from $85,449.41 to $69,036.83) because the trustee incurred the expense of hiring additional counsel (the Murphy firm) to handle BAM's lien claim. The trustee paid the Murphy firm from funds that the court found would otherwise have been distributed on the creditors' claims.

BAM argues that Franke would not have been entitled to $85,449.41, even if that full amount had been available for distribution on his claim. BAM points out that Franke's claim for fees against the Wilburns was based on an hourly fee contract that did not provide for interest; that according to Franke's third party claim, he was owed $73,712.63 as of January 1996; and that according to the bankruptcy appellate panel, Franke claimed he was owed $64,124.62 as of July 1999. BAM did not present this argument at trial and did not present any evidence contradicting Franke's claim that he was owed $85,449.41 at the time of trial for the Wilburns' fees. Franke's prior claims stated that fees continued to accrue. BAM also did not present evidence that the Wilburns' debt to Franke had been reduced by payment of a particular amount. At trial, BAM's counsel asked Franke, "Did you receive any payment from the Wilburns on your attorney's fees at all other than the funds you ultimately received in the distribution?" to which Franke responded, "Yes." There was no followup question and the nature or amount of the payment was never established.

BAM argues that the Murphy firm was actually hired in response to Franke's 1995 request that the trustee's prior counsel be replaced. Franke and Attorney Winfield gave conflicting testimony about the trustee's reasons for hiring the Murphy firm. Franke testified that the Wilburn distribution had been reduced because the trustee employed additional counsel to handle the priority claim dispute between BAM and Franke. Winfield testified that the

reason the trustee hired additional counsel was because Franke had complained in 1995 that Winfield's firm had a conflict of interest. The trial court resolved this conflict in favor of Franke, finding that Murphy was hired "to handle [BAM's] levy, execution of lien and claim of priority over [Franke's] lien to the Wilburn claim and the distributions to be made on it. The bankruptcy trustee did not retain the Murphy firm in response to [Franke's] August 8, 1995 letter demanding replacement of his current counsel . . . ." Franke's testimony, offered without objection, and the trustee's May 1998 report of a payment to the Murphy firm, provide substantial evidence in support of this finding.

### (d)  $30,215.86 Value of Delay in Distribution

The trial court found that BAM's "levy delayed the distribution of funds on the Wilburn Claim to [Franke] from at least May 8, 1998 through November 21, 2001," and that the resulting lost time value of the distribution was $30,215.86. BAM contends that no delay in distribution resulted from the enforcement proceedings. The court found that "[h]ad [BAM] not obtained the levy and execution lien on the distributions to be made on the Wilburn claim, the bankruptcy trustee would have made the distribution on that claim to [Franke] no later than May 8, 1998, and possibly as early as August 9, 1996." May 8, 1998, was the date on which the United States Trustee's Office approved and filed the bankruptcy trustee's final report and requested approval from the bankruptcy court. Franke testified as an expert on bankruptcy proceedings that it is very unusual for creditors to object after the United States Trustee has approved and filed the final report. He testified without objection that in bankruptcy proceedings, "At the time of final report, claims litigation should be over. Otherwise, the trustee wouldn't make a final report." The court took notice of the fact that the bankruptcy trustee had actually made a distribution to BAM before the bankruptcy court had entered any order approving the final report or determining priority. Franke testified without objection that distribution could have been made before the final report was filed.

The value of the delay was demonstrated by Franke's testimony as an expert in finance that the lost time value of the distribution was $30,215.86, based on the interest that would have accrued between May 8, 1998, and November 21, 2001. BAM did not offer contrary evidence and did not object to Franke's expert opinion testimony with respect to bankruptcy or finance.

### (e)  $54,435.10 Prejudgment Interest

The trial court found that all of Franke's recoverable damages were capable of being made certain and that he had the right to recover prejudgment interest from the date of the undertaking or when the damages were

incurred, whichever was later. The court awarded $54,435.10 in prejudgment interest. The award was supported by Franke's testimony and was demonstrated by the calculations set forth by Franke.

### (5) Attorney's Fees and Costs Incurred in the Action on the Undertaking

The trial court determined that Franke was entitled to his fees in this action on the undertaking because, "The Undertaking constituted a contract and its terms included the provisions of [section] 720.260 [subdivision] (c)(2), giving [Franke] the right to recover, among other things, 'costs, and attorneys' fees.' " We agree with BAM that section 720.260, subdivision (c)(2) does not authorize fees incurred in the action on the undertaking.

■ In an action on an undertaking, judgment must include the costs of obtaining the judgment but only to the extent authorized by section 1032. (*Exchange Nat. Bk. v. Ransom* (1942) 52 Cal.App.2d 544, 547 [126 P.2d 620]; *Harris v. Northwestern National Ins. Co., supra,* 6 Cal.App.4th 1061, 1065.) Section 1032 allows a prevailing party to recover attorney's fees as costs only when authorized by contract, statute or law. (§§ 1032, subd. (b), 1033.5, subd. (a)(10).) Neither section 720.260 (liability on the undertaking) nor section 996.430, subdivision (a) (action on the undertaking) states that a prevailing party on an action on the undertaking is entitled to fees.

Section 720.260, subdivision (c)(2) provides that an undertaking indemnifies the secured party "against any loss, liability, damages, costs, and attorney's fees, incurred by reason of the enforcement proceedings," but the reference to fees only authorizes those fees that were incurred "by reason of the enforcement proceedings." (*Exchange Nat. Bk. v. Ransom, supra,* 52 Cal.App.2d 544, 545–546.) In *Exchange Nat. Bk.,* the prevailing secured party in an action on the undertaking was not entitled to his fees as a prevailing party. In that case, the undertaking was given pursuant to former section 689, a predecessor to section 720.260. Former section 689 provided that the undertaking indemnified the secured party " 'against loss, liability, damages, costs and counsel fees, by reason of such seizing, taking, withholding or sale of such property by such officer.' " The court held that this language did "not specifically authorize the court in the instant proceeding to make any allowance for such fees. If any basis for the recovery of [the prevailing party's] counsel fees exists it must be found in the undertaking itself." (*Exchange Nat. Bk.,* at p. 547.) BAM's undertaking did not contain a fee provision.

The award of $39,270 in attorney's fees to Franke as the prevailing party in this action on the undertaking is vacated. The judgment is in all other respects affirmed. Each party shall bear its own costs on appeal.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied April 16, 2009, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied July 8, 2009, S172368.