Filed 5/31/13  International Space Optics v. Hamasaki  CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| INTERNATIONAL SPACE OPTICS, S.A., <br><br> Plaintiff, <br><br> v. <br><br> PAUL HAMASAKI et al., <br><br> Defendants and Appellants; <br><br> YOSHIKO K. OSWALD, as Trustee, etc., <br><br> Third Party Claimant and Respondent. | G046840 <br><br> (Super. Ct. No. 07CC04325) <br><br> O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Glenda Sanders, Judge.  Affirmed.

Alpert, Barr & Grant, Adam D.H. Grant and Alexander S. Kasendorf for Defendants and Appellants.

Alling & Jillson and Gregory D. Ott for Third Party Claimant and Respondent.

No appearance for Plaintiff.

\* \* \*

This appeal involves the third-party claim process (Code Civ. Proc., § 720.010 et seq.)[1] set forth in the Enforcement of Judgments Law (§ 680.010 et seq.). Judgment creditors Paul Hamasaki and Scott Hamasaki (collectively, the Hamasakis) appeal an order denying their petition for a hearing on a third-party claim made by respondent, Yoshiko K. Oswald, in her role as representative of the Yoshiko K. Oswald Trust (the Trust). The trial court ruled that it lacked jurisdiction to rule on the merits because the Hamasakis did not file their petition within the time period specified by section 720.310, subdivision (a). We affirm.

FACTS

As described fully in a prior opinion (*International Space Optics, S.A. v. Hamasaki* (Dec. 14, 2012, G045656) [unpub. opn.]), the Hamasakis (among other defendants) obtained a defense verdict in a jury trial. Judgment was entered in favor of the Hamasakis and against plaintiff International Space Optics, S.A. (ISO) on August 16, 2011. The judgment included an award of attorney fees and costs in favor of the Hamasakis and against ISO in excess of $700,000.

The court issued a writ of execution to the Hamasakis on August 25, 2011. (See §§ 699.510, 699.520.) On or about August 30, 2011, the Orange County Sheriff's

---

[1] All statutory references are to the Code of Civil Procedure.

2

Department (Sheriff) levied on cash assets of ISO in the amount of $27,775.61. (See § 700.010 et seq.) It appears the Sheriff levied upon deposit accounts (§ 700.140), as the record indicates the funds were held by Wells Fargo and Union Bank. Presumably, the banks complied with their duty to "deliver to the levying officer any of the property levied upon." (§ 701.010, subd. (b)(1).)

On September 19, 2011, Oswald filed verified amended third-party claims with the Sheriff.[2] Oswald contended the Trust had a security interest in all property of ISO up to $1,124,590. (See § 720.210 et seq. [third-party claims based on security interest in personal property].) Oswald asserted she had obtained a security interest in favor of the Trust by virtue of "a series of cash advances made by" the Trust since August 2008. Attached to Oswald's third-party claim were copies of a "promissory note" pertaining to a "revolving loan" signed by ISO,[3] a security agreement between ISO and

---

[2] Oswald filed defective third-party claims earlier in September, but we ignore the initial third-party claims for purposes of this opinion, as they have no effect upon our analysis. The parties, perhaps referring to the date the amended claim documents were signed by counsel and Oswald represent that the amended third-party claims were filed with the levying officer on September 16. Our review of the file stamps on the documents suggests they were actually filed on September 19.

[3] Oswald signed the document on behalf of ISO as its president and secretary. The loan agreement was first executed in August 2008, at which time a credit limit of $300,000 was in place. On two subsequent occasions, the credit limit was increased (first to $600,000, then to $1.2 million). Although not relevant to the issues before us, we express our discomfort with the notion that a loan agreement evidencing a revolving line of credit can properly be referred to as a promissory note. A promissory note is commonly understood by lawyers to mean "[a]n unconditional written promise, signed by the maker, *to pay* absolutely and in any event *a certain sum of money* either to, or to the order of, the bearer or a designated person." (Black's Law Dict. (7th ed. 1999) p. 1086, col. 1, italics added.) The document at issue here is "a conditional agreement to repay whatever sums might periodically be advanced." (*Remington Investments, Inc. v. Hamedani* (1997) 55 Cal.App.4th 1033, 1042; *id*. at p. 1035 [stating that "line of credit was evidenced by a document somewhat inaccurately entitled 'Promissory Note'"].)

Oswald (as trustee),[4] and two Uniform Commercial Code financing statements. Oswald contended that the $27,775.61 should be released to the Trust.

The Sheriff served the Hamasakis with a copy of Oswald's third-party claim by mail on September 22, 2011. (§ 720.240 [levying officer's duty to serve third-party claim on parties].) The Sheriff notified the Hamasakis that "[a]n undertaking to release the property pursuant to Section 720.610 . . . has not been filed by the third party claimant." The Sheriff's notification warned the Hamasakis that the property (i.e., the $27,775.61) would be released unless the Hamasakis filed an undertaking.

On September 26, 2011, the Hamasakis filed an undertaking with the court, apparently in the amount of $10,000. (See § 720.260, subd. (b).) A copy of the actual undertaking is not in the record. Nor is a copy of the creditor's statement that must accompany "an undertaking . . . in response to a third-party claim by a secured party" (§ 720.280) in the record.

On October 6, 2011, Oswald filed a "cash bond" of $10,000 with the Sheriff.[5] In her letter to the Sheriff, Oswald cited section 720.630, subdivision (d), which states that "[i]f the creditor has given an undertaking in response to the third person's claim regarding the property pursuant to Section . . . 720.260, the third person's undertaking shall be in the amount of the creditor's undertaking." Oswald's letter explained that "[a]s the creditor in this case Imtek International, et al. has previously

---

[4] Oswald signed for both ISO (as president and secretary of ISO) and as trustee.

[5] See § 995.710 ("Except . . . to the extent the statute providing for a bond precludes a deposit in lieu of bond or limits the form of deposit, the principal may instead of giving a bond, deposit with the officer any of the following: [¶] (1) Lawful money of the United States") and § 995.210, subd. (b) ("If a statute provides for an undertaking, a bond that otherwise satisfies the requirements for the undertaking may be given in its place with the same effect"). Thus, although section 720.610 et seq. calls for an "undertaking" by the third-party claimant, a "bond" can typically be used in lieu of an "undertaking," and a cash "deposit" can typically be used in lieu of a "bond."

4

posted a bond of $10,000, the Trust posts a bond in the same amount as required by" section 720.630, subdivision (d). The letter includes a notation indicating a copy was provided to counsel for the Hamasakis. But the letter does not indicate that a copy of the check deposited with the Sheriff was enclosed with a copy of the letter provided to the Hamasakis.

On October 27, 2011, the Sheriff mailed counsel for the Hamasakis the following notice: "This is to inform you that our office has received a check in the amount of $10,000.000 posted as a cash bond from . . . attorneys for the third party claimant, in response to the bond in the amount of $10,000.00 posted by the plaintiff Imtek International. [¶] Our office will continue holding the funds pending an order from the court." The Sheriff's notice did not include a copy of the "undertaking" and did not include "a notice that the property will be released unless, within the time allowed as specified in the notice, the creditor objects to the undertaking." (§ 720.640, subd. (b).)

On November 8, 2011 (33 days after the $10,000 was deposited by Oswald and 12 days after the Sheriff sent the letter to the Hamisakis notifying them of the cash deposit), the Hamasakis filed a petition for hearing on Oswald's third-party claim pursuant to section 720.310. On November 23, 2011, the Hamasakis filed and served a notice of hearing on the third-party claim (set for Jan. 27, 2012) and a statement in opposition to Oswald's third-party claim (basically, a memorandum of points and authorities with accompanying evidentiary submissions).[6]

The court conducted a hearing on January 27, 2012, at which the primary subject was whether the Hamasakis' petition was filed in a timely fashion. The court ultimately denied the petition for hearing on Oswald's third-party claim. According to

---

[6] There is no written opposition to the petition in the record. Oswald requests that this court consider an additional piece of correspondence not included in the trial court record, which supposedly demonstrates that the Hamasakis had actual notice of Oswald's $10,000 cash deposit as of October 13, 2011. We deny this request for judicial notice and/or motion to augment the record with new evidence.

the court, the petition was not filed within the time provided by section 720.310, subdivision (a), and the court therefore lost jurisdiction to rule on the merits of the claim. The Hamasakis appeal the court's order denying their request to adjudicate the merits of Oswald's third-party claim via the statutory third-party claim process.

The status of the $27,775.61 is unclear from the record provided. It appears the Sheriff was required to release the property to ISO or Oswald (§ 720.270) based on the lack of an objection to Oswald's undertaking (§ 720.660) and the lack of a restraining order (§ 720.380, subd. (b)). "A hearing may be had on the third-party claim . . . notwithstanding the release of the property pursuant to this section." (§ 720.270, subd. (d).)

## DISCUSSION

Because the resolution of this appeal turns on the interpretation of relevant statutes, our review is de novo. (*Bruns v. E–Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724 ["Statutory interpretation is a question of law that we review de novo"].)

*The Third-party Claim Process*

"The Enforcement of Judgments Law [citation] includes procedures for determining the claims of third persons, i.e., those other than the judgment debtor and creditor. [Citation.] The purpose of third party claims is to give a quick and effectual remedy to third parties whose property has been levied upon by mistake." (*Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323, 1329.)[7]

[7] An issue not raised below or addressed in the briefs is whether Oswald is a "third party" with standing to utilize the third-party claim process. Oswald was a cross-defendant in this case and therefore a party to the action, at least for some purposes. But one might posit she is not a "party" to the Hamasakis' enforcement of the judgment against plaintiff ISO. The cross-complaint is not at issue in this particular postjudgment

6

The statutory "third party claim procedures are optional and the third party does not waive a superior interest in the property levied upon by failure to make such a third party claim." (*Ibid*; but see §§ 720.510 ["A creditor may make a demand . . . that a secured party . . . file a third-party claim to personal property that has been levied upon under . . . a writ of execution"], 720.550 [secured party may lose priority if it does not file claim in response to creditor's demand].)

A judgment creditor "may levy on property even where there are competing liens and the priority of these liens has yet to be resolved." (*Peck v. Hagen* (1989) 215 Cal.App.3d 602, 607.) "Where personal property has been levied upon [by writ of execution], a party claiming a security interest or lien may file a third party claim pursuant to . . . section 720.210 et seq." (*Oxford Street Properties, LLC v. Rehabilitation Associates, LLC* (2012) 206 Cal.App.4th 296, 307.) A third-party claim based on an asserted security interest in personal property must include the name of the secured party, a description of the personal property subject to the security interest, a description of the security interest claimed, a statement of the amount due on any underlying obligation,

proceeding. The Hamasakis, defendants but not cross-complainants, are seeking to enforce a portion of the judgment arising solely out of ISO's complaint. Oswald, as trustee, filed a third-party claim in response to the Hamasakis' levy on ISO's property. One treatise suggests "[t]he third party claim procedures may not be utilized by parties to the action." (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2012) ¶ 6:1605, p. 6H-2 (rev. #1, 2010), citing *Commercial & Farmers Nat. Bk. v. Hetrick* (1976) 64 Cal.App.3d 158 (*Hetrick*).) But the case relied on as authority for this proposition involved a codefendant filing a third-party claim in response to the plaintiff's pre-judgment attachment of personal property in the possession of the other defendant. (*Hetrick*, *supra*, 64 Cal.App.3d at pp. 160, 163 ["We do not perceive . . . any reason for allowing two codefendants to contest, as between themselves, the question of title to property in the middle of attachment proceedings prior to judgment"].) The rationale of *Hetrick* is not necessarily persuasive in the context of the instant case. The relevant statutes do not clarify this issue. The phrases "third person" (e.g., §§ 720.110, subd. (a), 720.210, subd. (a)) and "third-party claim" (e.g., §§ 720.120, 720.220) are never defined. (Cf. § 720.020 [defining "'[c]reditor'"]; § 720.030 [defining "'[d]ebtor'"].) For purposes of this opinion, we will assume without deciding that Oswald in her role as trustee was entitled to utilize the third-party claim process.

7

and "a copy of the security agreement and any financing statement." (§ 720.230.) The third-party claim must be filed before the levying officer "[s]ells the property," "[d]elivers possession of the property to the creditor," or "[p]ays the proceeds of collection to the creditor." (§ 720.220.)

Once the third-party claim has been filed, either the creditor (here, the Hamasakis) or the third party (here, Oswald) may petition the court to adjudicate the merits of the third-party claim pursuant to an abbreviated statutory third-party claim process. (§ 720.310, subd. (a).) Absent good cause, this summary proceeding "shall be held within 20 days after the filing of the petition . . . ." (§ 720.310, subd. (c).) In general, "discovery is not available" in third-party claim proceedings. (*Whitehouse v. Six Corp.* (1995) 40 Cal.App.4th 527, 536.) There is no right to jury trial and no factual findings by the court are required. (§§ 720.400, 720.410.) Once the court reaches the merits of the third-party claim, final judgment is entered and "the judgment is conclusive between the parties to the proceeding." (§ 720.390; see *Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1016-1017 [third-party claim ruling is res judicata].)

Recent cases demonstrate that third parties are not always successful in their attempts to prove they possess perfected security interests in deposit accounts. (See *Oxford Street Properties, LLC v. Rehabilitation Associates, LLC*, *supra*, 206 Cal.App.4th at pp. 307-310 [judgment denying third party's claim affirmed]; *Full Throttle Films, Inc. v. National Mobile Television, Inc.* (2009) 180 Cal.App.4th 1438, 1440-1444 [trial court order releasing levied property in response to third-party claim reversed for lack of substantial evidence].)

*Timeliness of Petition for Hearing to Determine Validity of Claim*

The court ruled that the Hamasakis' petition was untimely under section 720.310, subdivision (a), and that the court therefore lacked jurisdiction to reach the merits of Oswald's third-party claim. "Not later than 15 days after the third-party claim

8

is filed with the levying officer pursuant to Section . . . 720.220, or 15 days after filing an undertaking pursuant to Section 720.610, either the creditor or the third person may petition the court for a hearing to determine the validity of the third-party claim and the proper disposition of the property that is the subject of the claim." (§ 720.310, subd. (a).)

The court's analysis was simple. The Hamasakis (the "creditor" as defined in § 720.020) filed their petition under section 720.310, subdivision (a), on November 8, 2011. The Hamasakis did not petition the court for a hearing within 15 days of the filing of Oswald's third-party claim on September 19, 2011. Nor did the Hamasakis petition the court for a hearing within 15 days of Oswald's filing of an undertaking pursuant to section 720.610 on October 6, 2011. Thus, the Hamasakis' petition was not timely under section 720.310, subdivision (a).

According to a series of cases applying former versions of the third-party claim statutes, trial courts lack jurisdiction to reach the merits of a third-party claim pursuant to the abbreviated statutory process if a petition requesting such a hearing is not filed in a timely fashion. (*Ballagh v. Williams* (1942) 50 Cal.App.2d 303, 304 [petition filed two days late under version of statute requiring petition to be filed within 10 days of delivery of claim to levying officer]; *Michael v. Burge* (1959) 176 Cal.App.2d 128, 130-132 [follows *Ballagh* in reversing court that reached merits of untimely petition]; see also *Commercial Credit Plan, Inc. v. Gomez* (1969) 276 Cal.App.2d Supp. 831, 834 [noting the law is "clear that when 15 days have run from the filing of the third-party claim and no petition for hearing has been filed, the trial court in which the suit was brought loses jurisdiction to hear the summary proceeding"]; Ahart, Cal. Practice Guide: Enforcing Judgments and Debts, *supra*, ¶ 6:1673, p. 6H-15 (rev. #1, 2011) ["If the petition is not timely filed, the court that entered the judgment *loses jurisdiction* to entertain the summary proceedings"].) Citing these cases, the court ruled that it lacked jurisdiction to rule on the merits of the third-party claim; the court could not overlook the tardiness of the Hamasakis' petition.

9

The Hamasakis do not directly attack this bright line rule. Instead, they claim they were never properly served in connection with the filing of Oswald's undertaking. The Hamasakis do not deny they received Oswald's letter to the Sheriff and the Sheriff's letter to the Hamasakis, indicating that a $10,000 undertaking was filed pursuant to sections 720.610 and 720.630, subdivision (d). But the Hamasakis point to misleading references in both documents to "Imtek International" (Imtek) as the party that had filed the initial undertaking. Imtek apparently was once a party to this action and, as described in our prior opinion, was important to the underlying dispute between the parties. Obviously, it was the Hamasakis, not Imtek, that posted the initial $10,000 undertaking. And Imtek was neither a creditor nor a plaintiff in this action, as stated in Oswald's and the Sheriff's letters, respectively. The Hamasakis implicitly assert that the jurisdictional 15-day limit set forth in section 720.310, subdivision (a), only applies when appropriate service of the undertaking has occurred.

Section 720.640, subdivision (b), sets forth the levying officer's duties when in receipt of an undertaking from a third-party claimant under the circumstances presented in the instant case: "If the undertaking to release property is filed with the levying officer after the third-party claim is filed, not later than five days after the undertaking is filed, the levying officer shall serve a copy of the undertaking on the creditor and on the debtor with a notice that the property will be released unless, within the time allowed as specified in the notice, the creditor objects to the undertaking. Service shall be made personally or by mail." The record suggests a copy of the undertaking (here, the check that was presumably deposited with the Sheriff) was not served on the Hamasakis. Nor did the Sheriff's letter include a notice that the property will be released unless the creditor objects to the undertaking. Nor did the Sheriff serve the documents "not later than five days after the undertaking is filed." Along with the inaccurate reference to Imtek, it appears there were multiple imperfections in the service provided under section 720.640, subdivision (b).

10

Ultimately, however, these imperfections have nothing to do with the 15-day jurisdictional limit set forth in section 720.310, subdivision (a), which does not refer to service of the undertaking. Instead, a creditor seeking to petition "for a hearing to determine the validity of the third-party claim" has "15 days after [the third party filed] an undertaking pursuant to Section 720.610 . . . ." (*Ibid.*) The Legislature was well aware of how to link a time limit to service rather than filing. For instance, section 720.240, subdivision (b), states that "[t]he time allowed the creditor for objecting to the third person's undertaking to release the property or for filing an undertaking and statement or making a deposit pursuant to subdivision (a) is *10 days after service* under subdivision (a)." (Italics added.) Similarly, the time limit to object to the third party's undertaking under section 720.610 is "the time allowed as specified in the notice" served by the levying officer. (§ 720.640, subd. (b); see § 720.660.) Apparently, the Hamasakis did not object to Oswald's undertaking. Thus, the question of whether Oswald's undertaking was appropriate and whether the Hamasakis' objection was timely is not before this court.

In sum, service issues do not affect the 15-day time limit set forth in section 720.310, subdivision (a). The court correctly determined that it lacked jurisdiction to reach the merits of this dispute because the petition was not filed within 15 days of the filing of Oswald's undertaking. (Cf. *Southwest Airlines v. Worker's Comp. Appeals Bd.* (1991) 234 Cal.App.3d 1421, 1424-1426 ["filing," not service, of order denying reconsideration is baseline for applying jurisdictional 45-day time limit for filing writ of review under applicable statute].) For the same reason, the Hamasakis' contention that Oswald is equitably estopped from relying on her defective notice of the undertaking fails.[8]

---

[8] We also note that the Hamasakis' claim of equitable estoppel is forfeited, as we see no indication in the record that equitable estoppel was raised in the trial court.

11

This is not a particularly harsh result. By missing the deadline, the Hamasakis lost the opportunity to avail themselves of an "expeditious and relatively inexpensive procedure . . . ." (*Whitehouse v. Six Corp.*, *supra*, 40 Cal.App.4th at p. 536.) But the Hamasakis retain their substantive rights. The court did not reach the merits of the third-party claim and enter judgment thereon. The Hamasakis may file an independent action against Oswald to resolve their claim for damages. (See *Franke v. BAM Building Co.* (2009) 172 Cal.App.4th 224, 232 ["failure to obtain a determination of liability on the undertaking in a summary enforcement proceeding does not discharge the surety and the secured party may subsequently file a civil action on the undertaking"]; *Commercial Credit Plan, Inc. v. Gomez*, *supra*, 276 Cal.App.2d Supp. at p. 834 [the fact that a third-party claim was filed did not require merits to be adjudicated in summary statutory proceeding; independent action could be brought].)

It is also possible a different summary procedure may be utilized in the instant action. A beneficiary of a bond may enforce the bond by a separate civil action (§ 996.430) or by filing a motion in the action or proceeding in which the bond was posted (§ 996.440). If there is a "triable issue of fact" presented by the moving and opposition papers filed under section 996.440, a bench trial shall occur following "sufficient time for such discovery proceedings as may be requested." (*Id*., subd. (d).) "The Bond and Undertaking Law . . . applies to a bond given pursuant to [the third-party claims process], except to the extent this title prescribes a different rule or is inconsistent." (§ 720.710.) We express no opinion as to whether the abbreviated process set forth in section 996.440 is "inconsistent" with the third-party claim process.

12

DISPOSITION


The postjudgment order is affirmed.  Oswald's request for judicial notice and/or motion to augment the record with additional evidence is denied.  Oswald shall recover costs incurred on appeal.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.