Filed 12/21/20  Estate of Greer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| Estate of FRANK W. GREER, Deceased. | C087492 |
| CATHERINE SANTA MARIA, | (Super. Ct. No. 28760) |
| Petitioner and Respondent, | |
| v. | |
| BRIAN FRANK GREER, | |
| Objector and Appellant. | |

Objector and appellant Brian Greer raises numerous arguments contending the probate court committed errors when it appointed the petitioner as executor of the will, required objector to transfer possession of the decedent's home to the executor, denied certain reimbursements, and imposed extraordinary attorney fees, damages, and statutory

1

penalties on him as part of approving the executor's final report and distribution of assets. We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Our statement of facts is based primarily on the probate court's ruling.

Objector and appellant Greer initiated this proceeding by filing a petition for letters of administration. He contended the decedent, his father, had died intestate and had partially revoked his trust to allow his real property to pass to Greer by intestate succession. Greer had lived with decedent in decedent's home for several years and continued to reside in the home.

Greer's stepsister, petitioner and respondent Catherine Santa Maria, objected to Greer's petition and filed a competing petition for probate of decedent's will. The will gave decedent's entire estate to the trustee of decedent's trust. Greer and Santa Maria were each 50 percent beneficiaries of the trust.

Following a contested hearing, the probate court granted Santa Maria's petition and denied Greer's. It determined the will was valid and ordered the will be admitted to probate. The will stated that Greer and Santa Maria were to serve as co-executors. However, the court determined they would be unable to work together, and it appointed Santa Maria as the executor.

Greer filed a motion to disqualify the probate court judge and a motion for the court to "provide [Greer] relief by authority of equitable judicial discretion." The court denied both motions.

Santa Maria as the executor filed a petition pursuant to Probate Code section 850 to recover estate property, including real property, damages, and statutory penalties in the form of double damages pursuant to Probate Code section 859. (Statutory section citations that follow are to the Probate Code unless noted otherwise.) The probate court

2

granted the petition in part and ordered Greer to turn over possession of all estate property. It reserved the other issues.

Ultimately, the probate court approved the Second Amended First and Final Account and Report (the Final Report). The assets in the estate totaled $204,761.78. From this amount, the court ordered the following payments: $7,605.83 to the executor and the same amount to executor's counsel for statutory compensation; $3,742.72 for costs of administration; $9,067.07 as reimbursement of expenditures to the executor; and $2,963.66 as reimbursement of expenditures to Greer.

The court also awarded $13,447.50 in additional attorney fees for extraordinary services. It found that litigation on various motions filed by Greer, services related to the sale of the real property, and litigation of the section 850 petition went beyond the scope of the typical probate proceeding.

Ruling on the section 850 petition for damages, the court found that Greer owed $20,400 in unpaid rent to the estate for the time he had occupied decedent's home after decedent died. Since Greer was a 50 percent beneficiary, the court ordered that the distribution to Greer be reduced by half the amount owed, $10,200. The court further found that Greer's possession of the estate property had been in bad faith for a portion of the time, and it imposed a statutory penalty against him under section 859 in the amount of $5,075, representing the fair rental value of the home for a period of 3.5 months.

Greer appeals from the probate court's order.

DISCUSSION

I

*Standards of Review*

We apply the same standards of review in probate appeals as we do in civil appeals. We independently review questions of law and mixed questions of law and fact where legal issues predominate. (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212.)

We review for substantial evidence questions of fact and mixed questions of law and fact where application of the law is essentially factual in nature. (*Estate of Teel* (1944) 25 Cal.2d 520, 526-527; *Harustak v. Wilkins, supra*, at p. 213.) We review the trial court's discretionary rulings for abuse of discretion. (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448-1449.)

In this appeal, we deal with an incomplete record. There is no reporter's transcript. Also, key evidentiary items are not included in the record. Decedent's will and trust declaration are not in the record nor are any filings or court orders regarding the appointment of Santa Maria as the executor.

The lack of a complete record limits our ability to review this case. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see generally 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409 [citing cases].) 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' ([*Ibid.*]; see Cal. Const., art. VI, § 13.) 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.) ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' (*Hernandez v.*

4

*California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609, fn. omitted (*Jameson*).)

We recognize that Greer is appearing in pro per, but pro per litigants are held to the same standards as attorneys. (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.) Because Greer has not included an adequate record to support his appeal, he forfeits several of his contentions. We will indicate which contentions are forfeited as we proceed.

## II

### *Sufficiency of the Evidence*

Greer contends the facts are different than the trial court found. He asserts he was entitled to sole possession of decedent's home. He claims that decedent and decedent's wife invited him in 2006 to live rent free in their Walnut Creek home when he was unable to find employment "due to illegal, employment blacklisting . . . for a valid medical claim[.]" After decedent's wife died in 2012, decedent sold the home and purchased a home in Redding. He took title to the home in his own name and not as a trustee of the trust. Greer claims decedent also did not designate the home as a trust asset. Greer asserts that by not including the home in the trust, decedent gifted the home to him.

Greer also asserts that section 2.4.1(1) of the trust declaration gave decedent the discretion to gift the house to him and effectively nullify the pour-over provision and the trust requirements without having to amend the trust declaration. Without that authority, Greer claims, decedent's actions would have breached the trust declaration. Greer asserts that in any event, Santa Maria cannot challenge the "agreement" between he and decedent due to estoppel occasioned by her silence toward the agreement during decedent's lifetime. Greer also asserts that the four-year statute of limitations in section 337 of the Code of Civil Procedure for actions alleging breach of a written contract bars

5

Santa Maria from enforcing the terms of the trust, as the agreement between decedent and Greer was made in 2006 when Greer moved in.

We disagree with Greer's contentions. His argument is really a claim that the evidence does not support the trial court's findings of fact. The trial court rejected Greer's contentions when it ruled on the section 850 petition. It stated: "Mr. Greer has insisted that it was his father's intention that he continue to reside in the property rent-free, and that Mr. Greer was to inherit the property outright. Mr. Greer has repeatedly argued the fact the real property was in decedent's name and not in the name of the trust indicates his intent that the real property pass to Mr. Greer by intestate succession. However, this argument ignores the fact that decedent died with a Will that gave his entire estate to the trustee of his trust. Mr. Greer argued that decedent had revoked his trust in part to allow the real property to pass to Mr. Greer. This argument was not supported by any evidence or law. Decedent had several years to modify either his Will or his trust documents to provide for Mr. Greer. He failed to do so. If decedent had intended for the real property to pass to Mr. Greer outside of the trust, he could have easily changed title to name Mr. Greer as a joint tenant. Again, he failed to do so. Despite Mr. Greer's argument to the contrary, decedent's desires with respect to his property were expressed in his Will and trust documents."

In the absence of a complete record, we presume sufficient facts exist which support the trial court's findings of fact. We presume the will and trust declarations support the trial court's findings, and we affirm on that basis. (*Jameson, supra*, 5 Cal.5th at pp. 608-609.)

Greer's claims that Santa Maria cannot challenge the alleged agreement between he and decedent are not pertinent. Santa Maria is not suing on any agreement between Greer and the decedent. Her standing to pursue this action arises from her status as a beneficiary of decedent's will and her appointment as executor. In that status, she was entitled to seek to enforce the will no matter what agreement Greer and the decedent may

6

have made in 2006.  Moreover, we presume the probate court correctly determined that the will took precedence over any such agreement.

## III

*Court's Violation of Trust Declaration*

Greer claims the probate court ignored the terms of the trust declaration.  He asserts the court arbitrarily removed him as co-executor.  He also claims the court ignored section 1.4 of the trust declaration, which, along with section 15620, required Greer's consent to change the status quo, including changing his "contract" to live at the home.  He asserts the declaration and its pour-over clause must be viewed as a suggestion considering his 2006 contract with decedent and his continued employment blacklisting. He claims decedent directed him to continue living in the home after his death.

Because the record does not contain any record of the court's decision to make Santa Maria the executor and does not contain the trust declaration, Greer has forfeited these contentions.  We assume all facts necessary to support the trial court's actions. (*Jameson, supra*, 5 Cal.5th at pp. 608-609.)

## IV

*Reimbursement of Expenses*

Greer claims that Santa Maria as the executor failed to respond to his claims for reimbursement in violation of section 9250, and the probate court failed to reimburse him for expenses he incurred while he served as a co-executor.  Greer cites to his sworn statements in the record to support his claim.  He also references certain exhibits to support his claim, but they are not included in the record.  He acknowledges that the probate court awarded him reimbursement, but he claims the court did not reimburse him for an additional $1,625.50 in expenses he incurred.  He also attacks an argument Santa

Maria made earlier in this litigation against his using the decedent's credit card for mortuary expenses, but the court did not charge him for credit card use.

Because the record is incomplete, Greer's sworn statements do not overcome the presumption that substantial evidence supports the trial court's determinations of his claims. The claim is forfeited due to the lack of a complete record.

V

*Extraordinary Attorney Fees*

Santa Maria requested extraordinary attorney fees for the litigation on the validity of decedent's will, litigation on various motions by Greer, services related to the sale of the real property, and litigation on her section 850 petition. The probate court determined that litigation into the will's validity was a standard part of a probate proceeding, and counsel did not incur extraordinary fees for that matter. However, the court found that the remaining matters went beyond the scope of the typical probate proceeding. As to those, it awarded extraordinary fees from the estate in the amount of $13,447.50.

Greer claims the award of extraordinary attorney fees was not justified. He asserts the probate court, by appointing Santa Maria as the sole executor, went against the expressed wish of decedent and his wife that Greer be co-executor and did so without obtaining Greer's consent as required by section 1.4 of the declaration to change the status quo. Thus, he claims, extraordinary attorney fees are no longer presumed to be authorized by decedent.

Greer also asserts that Santa Maria, in her claim for extraordinary fees, did not show that she acted in Greer's best interest, as required by section 10811, subdivision (c)(3). Her actions resulted in Greer incurring unnecessary fees and losses that could have been avoided if she had made a written settlement plan at the outset. Greer claims Santa Maria's inability to prove she acted in his best interest shows she acted in bad faith

8

and with a conflict of interest. He asserts she committed willful, avoidable, irreparable harm, resulting in an award of more than $67,000 against him.

We disagree with Greer's contentions. "A probate court must order compensation out of estate assets for routine probate services rendered by an executor's attorney. (Prob. Code, §§ 10800, 10810.) Services that are not involved in the typical probate case, commonly known as 'extraordinary services,' may be paid out of estate assets at the discretion of the probate court. (*Estate of Hilton* (1996) 44 Cal.App.4th 890, 894-895; Prob. Code, § 10811.)" (*Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore* (2008) 162 Cal.App.4th 1331, 1339.)

There is no evidence the trial court abused its discretion in awarding extraordinary fees. Again, without an adequate record, we presume sufficient facts support the trial court's findings of fact and exercise of discretion for awarding the fees. Also, to the extent Greer's argument is based on the court's selection of Santa Maria as the executor and language of the trust declaration, the argument is forfeited as those matters are not presented in the record.

Also, contrary to Greer's argument, Santa Maria was not required to show she was acting in Greer's best interest when she sought the extraordinary fees. The provision of section 10811 on which Greer relies, subdivision (c)(3), does not concern any duty the executor owes a beneficiary. Rather, the statute authorizes the executor's attorney to perform extraordinary services on a contingent-fee basis when, among other things, the court determines that the fee agreement is in the best interest of persons who are interested in the estate. (§ 10811, subd. (c)(3).) There is no evidence in the record that Santa Maria's attorney was performing extraordinary services pursuant to a contingent fee agreement.

9

# VI

## *Appointment of Executor*

Greer claims Santa Maria sought and was appointed sole executor with a conflict of interest and contrary to the terms of the trust declaration.  Therefore, all her actions and petitions are presumed to be in bad faith and the probate court's rulings are invalid.

In a related fashion, Greer claims the probate court acted out of bias by denying a request for an outside executor, by not compelling Santa Maria to make a written settlement counteroffer, and by allowing her to make unsupported allegations and causes of action against him at her first court appearance, contrary to section 856.5.  He further asserts it was a conflict of interest for Santa Maria's lawyer to represent her in an adversarial trial against him, an heir.  Greer claims these points barred Santa Maria from being appointed as sole executor under section 856.5.

These contentions are forfeited.  The record does not contain the moving papers, transcripts, and order of the probate court appointing Santa Maria as the executor.  Whether she ignored a settlement offer or made unsupported allegations against Greer at the first court appearance were matters we presume the court addressed and found against Greer, and we presume all facts necessary to support the court's determinations.

Furthermore, there is no evidence that the executor's attorney acted under a conflict of interest by representing the executor.  Probate counsel's direct attorney-client relationship is with the estate's executor.  (*Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1395.)  Unless they clearly are intended third party beneficiaries of counsel's services, the estate beneficiaries are not owed professional obligations by probate counsel.  (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 530.)  We presume sufficient facts support an implied finding by the probate court that Greer was not an intended beneficiary of probate counsel's direct representation, and thus no conflict of interest arose.

10

## VII

### *Harm Caused by Not Policing Background-Check Companies*

Greer contends that the State of California willfully and illegally does him irreparable harm by not policing background-check companies, who operate in secret. He alleges that under a "2002 Division of Workers Compensation contract," the state allows Safeway, Greer's former employer, to give his 2002 confidential medical history and protected medical claim to prospective employers through background check companies to make hiring decisions, with the intent to prevent Greer from being employed, in retaliation and violation of state and federal statutes. Greer complains that the probate court ignored his plea to mandate that the state stop the ongoing, illegal blacklisting of him, which he claims is the root cause of this probate dispute.

We take no position on Greer's contention. As alleged, it is a matter that is not within the scope of the probate action before us. The contention does not affect the probate court's orders in this matter.

## VIII

### *Bad Faith Acts by Executor*

Greer contends Santa Maria, acting as executor, committed numerous actions in bad faith that irreparably harmed him. These acts allegedly caused him damages in the amount of $257,898.67. Whether Santa Maria committed the alleged actions raises questions of fact, but there is no evidence in the record presented to us that the trial court addressed these claims. Due to the incomplete record, Greer has forfeited these claims and we assume all facts necessary to support any implied ruling by the trial court rejecting them.

IX

*The Section 850 Petition*

Greer raises several arguments to challenge the probate court's grant of Santa Maria's section 850 petition which required Greer to vacate the decedent's home and surrender the decedent's property. Each argument fails.

A.    *Solicitation to commit fraud*

Greer contends that Santa Maria and her attorney solicited the probate court to falsify its earlier ruling on the section 850 petition. In the Final Report, Santa Maria recited that her section 850 petition had sought to establish, among other things, that Greer's refusal to vacate the decedent's home and turn over possession to Santa Maria constituted bad faith wrongful taking and concealment so as to warrant double damages. Santa Maria noted that the court had granted her petition except that the issue of damages was trailing. Greer states that the court's first ruling on the section 850 petition did not use the words "bad faith," "wrongful," "took," "evict," "harm," "rent," "damages," "statutory penalty," or their equivalent. From this, he asserts that Santa Maria's use of those terms and concepts in the Final Report was an attempt to solicit the probate court to falsify its earlier ruling on the section 850 petition.

No attempt was made to solicit the court to commit fraud or falsify its earlier ruling. In the section 850 petition, Santa Maria alleged that Greer's refusal to turn over possession of the decedent's property constituted a bad faith wrongful taking that warranted bad faith double damages. When the probate court first ruled on the petition, it reserved all issues regarding damages and statutory penalties for later disposition. Then, when it approved the Final Report, the court specifically found that Greer's possession of the property was in bad faith for a portion of the time and it awarded bad faith damages, as Santa Maria had petitioned. No solicitation of fraud occurred.

12

B.      *Sufficiency of the section 850 petition*

Greer claims the section 850 petition was unlawful because it had no statement of facts, was not based on facts, and it excluded context.  He also asserts that the Final Report's "cause of action" against him and the court's final ruling were untimely and falsify the court's earlier ruling for failing to cite new facts or statutes to justify the request for damages.

The section 850 petition was required to set forth the "facts upon which the claim is based."  (§ 850, subd. (b).)  Santa Maria's petition met that standard, as it adequately set forth the facts of the decedent's ownership of the property, Greer's possession of it, and his refusal to turn over possession to the estate.  Similarly, Greer's contention that the Final Report, which he designates as a cause of action against him, was untimely and falsified the court's earlier ruling is unfounded.  The court was not required to cite new facts or new statutes other than those brought before it in the petition.

C.      *Timeliness*

Greer contends Santa Maria cannot recover damages in the form of lost rent for the time he occupied the home because she requested it in the Final Report a year after he vacated the premises.  He claims there was no rental agreement, no request for the rent was made prior to the filing of the Final Report, and no request to vacate was provided.  Santa Maria sought possession of the property with her section 850 petition, which was filed before Greer vacated it.  Greer cites no law that required Santa Maria to seek return of the property sooner than she did or that there had to be some form of rental agreement in place.  Moreover, his claim that he did not receive notice of the eviction prior to Santa Maria's filing the section 850 petition is belied by an e-mail he sent to Santa Maria's attorney more than a month before Santa Maria filed the petition in which he acknowledges the attorney's plan to seek eviction.  Greer has not established that the executor did not have the right to seek possession of the decedent's real property.

13

D.     *Due process*

Greer contends Santa Maria did not comply with the required process for evicting him from the home.  After the probate court granted Santa Maria's section 850 petition in part and directed Greer to surrender the real property, Santa Maria moved ex parte for approval to sell the home.  The court denied the motion because Santa Maria, as an executor with limited authority, did not have the authority to sell the real property without court supervision.  She had to proceed with court supervision in compliance with the procedures set forth in section 10300 et seq.

Greer argues that by this ruling, the probate court impliedly approved his continuing to live in the home rent free until the home was sold.  He asserts that as a result, Santa Maria had to request a hearing to show cause why Greer should have to vacate before the home was sold.  If she prevailed at that hearing, she then had to serve Greer with a 60-day written notice to vacate, or as a result of his indigency, a 90-day written notice.  (See Civ. Code, § 1946.1, subd. (b).)  He claims Santa Maria violated his due process rights when she did not request a show cause hearing.

Greer also contends the court violated his due process rights by granting the section 850 petition without requiring Santa Maria to show cause.  If the court treated that hearing as the show cause hearing, then, he claims, he was entitled to another 90 days of possession before having to move.  He understood that the court had ruled against him on the issue of his "possession-ownership," but he believed he still had a right to continue "possession-occupancy" rent free until the house was sold or until the expiration of 60 or 90 days following service of a notice to vacate.  No such hearing was held, and he claims no such notice was served or alleged.

Greer's analysis is incorrect.  It ignores the probate court's authority under a section 850 petition to transfer ownership and possession of property to the appropriate person outside of the usual eviction process.  Section 850 authorizes the executor to

14

petition the court for relief where "the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another." (§ 850, subd. (a)(2)(C).) Of significance here, such a section 850 petition "may include claims, causes of action, or matters that are normally raised in a civil action to the extent that the matters are related factually to the subject matter" of the petition. (§ 855.)

In other words, the executor bringing a section 850 petition to litigate adverse claims to real property may seek relief that it otherwise would have to obtain through a civil action. Such relief may include an order to convey or transfer title and possession of real property. (§ 856.)

Due process is provided. The executor must serve the petition and notice of the hearing at least 30 days before the scheduled hearing. (§ 851, subd. (a).) The court may not shorten the time for giving this notice. (§ 851, subd. (d).) Interested persons may file a response to the petition and may request an extension of time to do so for discovery proceedings or other preparation for the hearing. A court "shall grant a continuance for a reasonable time for any of these purposes." (§ 852.) The hearing is a full evidentiary hearing. (Ross & Moore, Cal. Practice Guide: Probate (The Rutter Group 2019) ¶ 15:626, p 15-167.) If the order directs the conveyance of real property, a certified copy of the order must be recorded in the county recorder's office. (§ 7263.)

Most significantly here, no further hearings or notice are required to obtain possession of the property. After entry of an order on a section 850 petition requiring conveyance or transfer of real property, "the person entitled thereunder has the right to the possession of the property, and the right to hold the property, according to the terms of the order *as if the property had been conveyed or transferred in accordance with the terms of the order*." (§ 857, subd. (b), italics added.) The transferee, in other words, is entitled to possess the property immediately. (Ross & Moore, *supra*, ¶ 15:630, p. 15-167.)

15

Greer thus was not entitled to any notices, hearings, or time to vacate beyond what he was provided. His contentions to the contrary are not supported by the law.

X

*Lawfulness of the Final Report and its Approval*

Greer raises numerous contentions against the Final Report (which, again, he calls a cause of action) and its approval, contending it is unlawful on its face, without remedy, and disingenuously brought. Most of the contentions raise questions of fact which are forfeited, especially those which are based on his theory that his moving into the home rent free in 2006 meant he acquired sole possession of the home upon decedent's death. The trial court clearly and repeatedly rejected this theory, and we presume sufficient evidence supports its finding. Some contentions concern points we have already addressed, such as the sufficiency and timeliness of the section 850 petition. We thus address only those contentions that raise questions of law or mixed questions of law and fact where the legal issues predominate.

A.      *Section 859*

Greer contends Santa Maria and the probate court misapplied section 859. That statute authorizes a court, upon finding that a person in bad faith wrongfully took property belonging to a trust or the estate of a decedent, to impose liability on that person in the amount of twice the value of the property recovered under a section 850 petition. Greer argues section 859 does not apply because it does not define bad faith as the refusal of a verbal directive by the executor to vacate the property, and because he did not "take" any action regarding the property. We disagree with these contentions.

Sections 850 to 859 are in the part of the Probate Code that "governs conveyances or transfers of property claimed to belong to a decedent or other person." (*Estate of Kraus* (2010) 184 Cal.App.4th 103, 110.) Section 850 establishes the grounds for filing a petition requesting the court to transfer property under these statutes, and in doing so, it

16

effectively defines the type of taking the court may penalize under section 859. As stated above, an interested person may bring an action under section 850 where, among other things, a decedent dies in possession of, or holding title to, real property, and the property is claimed to belong to another. (§ 850, subd. (a)(2)(C).) A taking thus occurs when a person possesses property which he does not own or have a legal right to possess. Santa Maria alleged Greer was such a person, and the trial court agreed. He took the property for purposes of section 859 by claiming an interest in it and by refusing to surrender possession when it was rightly owned by the trust.

The bad faith found by the trial court was not based on his alleged refusal to vacate upon the executor's verbal directive. Rather, bad faith arose when, after the trial court had twice rejected Greer's claim to the property as an intestate heir and the executor had demanded that he return possession, Greer continued to believe and assert he was entitled to possess the property and he continued to possess it for another three-and-a-half months. The court did not misapply section 859 in this instance.

### B. *Section 856.5*

Greer contends the Final Report and the request for relief under section 850 is barred by section 856.5. That statute states: "The court may not grant a petition under this chapter if the court determines that the matter should be determined by a civil action." There is no evidence the probate court determined that the issues raised by the section 850 petition should have been determined in a civil action.

### C. *Inconsistent final ruling*

Greer contends the probate court's final ruling is inconsistent in its findings of good and bad faith, and that damages should not have been imposed when the court found he had acted in good faith. The court determined that Greer did not act in bad faith at the outset when he asserted what he believed to be his rights to the property based on his theory of intestate succession. However, after the court had made clear to him that his

17

theory was not supported by the facts and the law, "Mr. Greer could not have entertained any reasonable belief that his possession of the property was authorized by law. It is at this point that the Court finds Mr. Greer's possession of the property was in bad faith." The court's findings are not inconsistent, and the imposition of damages and penalties is not inconsistent with the court's findings.

D. *Fiduciary duty*

Greer asserts that Santa Maria did not plead that he owed a fiduciary duty to vacate the premises on his own initiative. He claims that as a result, the probate court assumed the role of Santa Maria's attorney by implying that he had such a fiduciary duty even though the court had earlier removed him as co-executor. The court made no such implication. The court found he acted in bad faith by continuing to occupy the home after the court had clearly and unambiguously rejected his claim of ownership, not because he violated a fiduciary duty.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Santa Maria as executor of the estate. (Cal. Rules of Court, rule 8.278(a).)


_____
HULL, J.


We concur:


_____
BLEASE, Acting P. J.


_____
MAURO, J.

18