[No. F032805. Fifth Dist. Oct. 18, 2000.]

FRANCES HARUSTAK et al., Plaintiffs and Appellants, v.
JUDY WILKINS, as Trustee, etc., Defendant and Respondent.

**COUNSEL**

Dowling, Aaron & Keeler and William J. Keeler, Jr., for Plaintiffs and Appellants.

Wild, Carter & Tipton, Richard A. Harris and Wesley J. Hammond for Defendant and Respondent.

**OPINION**

**VARTABEDIAN, Acting P. J.**—Frances Harustak and Richard Heinrich appeal from a trial court ruling that their petition contesting an amendment

to a trust was untimely. Appellants argue their action is not time-barred because the trustee's notice of appellants' right to contest the trust did not comply with Probate Code section 16061.7, subdivision (g),[1] which requires a notice printed in the "reasonable equivalent" of 10-point boldface type contained in a separate paragraph. The trustee argues the notice does meet this statutory standard because, although not bolded or otherwise distinguished from the remaining text, the notice was contained in a separate paragraph and printed in 12-point type, which is larger than 10-point type. Because the entire document was printed in the same 12-point type, we agree with appellants and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 1995, Vernon and Rosielee Wilkins created a trust providing that upon the death of both settlors a certain piece of real property would be distributed to Judy Wilkins and Richard Heinrich. The remainder of the estate would be divided equally between Judy Wilkins and Frances Harustak. Judy was named as first successor trustee and Richard was named as second successor trustee. The terms of the trust also provided that upon the death of either settlor the trust would become irrevocable.

Vernon died on February 23, 1996, and Rosielee continued as sole trustee. On October 9, 1997, she signed a document purporting to amend the trust, thereby eliminating Richard as a beneficiary and removing him as second successor trustee. On June 27, 1998, Rosielee died, at which point Judy became the new trustee.

On July 21, 1998, Judy served Richard and Frances with a notice of the change in trust status, and informing them that any action to contest the trust must be brought within 120 days of the notice. (See copy of notice document attached to this opinion as appen. A.)[2] Richard and Frances did not file their action contesting the trust until December 15, 1998, 147 days after the trustee had mailed the notice.

The trustee opposed the petition, arguing that the statute of limitations had expired. The petitioners countered that their action was not time-barred because the trustee's notice did not meet the statutory requirements. The court ruled in favor of the trustee as follows:

"The warning portion of the notice issued by the Trustee in this case satisfied the requirements of Probate Code Section 16061.7(g) as it was

[1]Further statutory references are to the Probate Code unless otherwise noted.

[2]Although the appendix attached to the hard copy of this opinion was an exact duplicate that preserved the pagination and spacing as well as the type size and style of the original, its reproduction in the California Official Reports will result in an approximate 33 percent size reduction of the document; otherwise, all formatting will be retained and shown to scale.

reasonably equivalent to a 10-point boldface type since the warning portion of the notice was printed in 12-point type. There is a big difference between the size of 10 and 12-point type. Moreover, the warning portion of the notice issued by the Trustee was contained within a separate paragraph at the bottom of such notice and clearly stands out.

"In light of the fact that the Trustee's notice satisfied the requirements of Probate Code Section 16061.7(g), the petition to determine the validity of trust amendment and contest of purported trust amendment and petition to ascertain trust beneficiaries is time barred pursuant to Probate Code Section 16061.8."

This appeal follows.

## DISCUSSION

### Standard of Review

As an initial matter, the parties dispute the appropriate standard of review. Appellants seek de novo review, whereas the respondent trustee seeks a more deferential standard of review.

A trial court's interpretation of a statute is reviewed de novo. (*R & P Capital Resources, Inc. v. California State Lottery* (1995) 31 Cal.App.4th 1033, 1036 [37 Cal.Rptr.2d 436]; *Olson v. Cory* (1983) 35 Cal.3d 390, 402 [197 Cal.Rptr. 843, 673 P.2d 720].) Similarly, the application of a statutory standard to undisputed facts is reviewed de novo. (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [38 Cal.Rptr.2d 150, 888 P.2d 1279]; *Morrison v. State Board of Education* (1969) 1 Cal.3d 214, 218 [82 Cal.Rptr. 175, 461 P.2d 375].)

The de novo standard of review also applies to mixed questions of law and fact when legal issues predominate. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].) As the California Supreme Court explained: "If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, *in a factual context*, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently." (*Ibid.*, italics added [applying a de novo review to the trial court's determination that a particular item was a fixture].)

The application of the law to a set of facts is also subject to independent review when the issue "can have practical significance far beyond the

confines of the case then before the court." (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801 [35 Cal.Rptr.2d 418, 883 P.2d 960] [applying a de novo review to the question of whether a transaction was usurious].) The rationale is that "[i]f such questions were effectively removed from the consideration of the appellate courts, the development and clarification of . . . important issues . . . would be impeded." (*Ibid.*)

The rationales supporting the substantial evidence standard of review are that appellate courts should (1) defer to the fact finder's assessment of a witness's credibility because the fact finder was able to observe the witness's demeanor (see *Hurtado v. Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019, 1024-1025 [213 Cal.Rptr. 712])[3] and (2) respect jurisdictional considerations, such as the role of the trial court in deciding facts and the role of appellate courts in deciding questions of law (see *Tupman v. Haberkern* (1929) 208 Cal. 256, 262-263 [280 P. 970]). The justifications for de novo review are that appellate courts (1) have more time to research and debate an issue and, thus, are well suited to determining questions of law and (2) need to ensure uniform decisions. (*Hurtado v. Statewide Home Loan Co., supra,* 167 Cal.App.3d at p. 1024.)

■ Here, the trial court did not assess the credibility of any witnesses in reaching its decision. Moreover, the outcome of this appeal turns on the meaning of the statutory phrase "reasonable equivalent," which is a question of law, for which appellate courts are particularly well suited. As for the issue of whether the notice satisfies the statutory standard, this is either (1) a pure issue of law because none of the facts are disputed or (2) a mixed question of law and fact in which the issue of law predominates because of the need to consider legislative policy and the impact it may have on valuable inheritance rights in other cases. Resolving these issues will promote a uniform application of the statute in question. Thus, we review both issues de novo.

The trustee contends the appropriate standard of review is substantial evidence because this case involves extrinsic evidence in the form of a declaration, which was submitted by the trustee to assist the court in determining that the warning was printed in " 'Times New Roman Font' utilizing a 12-point type size" and that a "12-point type size is bigger in size than a 10-point type size." When the extrinsic evidence consists entirely of written declarations, however, we still review the issue de novo. (See *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83, 89 [80 Cal.Rptr.2d 147] [involving contract interpretation].)

---

[3]Disapproved on other grounds, *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479, footnote 4 [243 Cal.Rptr. 902, 749 P.2d 339].

The substantial evidence standard governs this appeal, the trustee continues to argue, because the trial court interpreted a statute that includes a "reasonableness" standard, i.e., the trial court determined that the text was the "reasonable equivalent" of 10-point boldface type in a separate paragraph. (See § 16061.7, subd. (g).) The trustee views this reasonableness standard as demonstrating the Legislature intended the probate court to exercise its judgment in determining whether a particular notice complied with the statutory standard; reasonableness is generally a question of fact,[4] thereby justifying, according to the trustee, the more deferential standard of review of substantial evidence.[5]

However, the cases applying the substantial evidence standard to a determination of reasonableness involve either the reasonableness of conduct or a reasonable amount of time in which to act, not the reasonableness of a warning in a document. Determining whether specific conduct or a certain amount of time is reasonable necessarily depends upon the totality of facts and circumstances of each case, whereas whether text constitutes the reasonable equivalent of 10-point boldfaced type in a separate paragraph depends only on the contents of the document in question. Thus, we believe that a trial court is in no better position than an appellate court to evaluate a document against this statutory standard.

. In addition, the Supreme Court has held: "The interpretation of a written instrument, even though it involves what might properly be called questions of fact (see Thayer, Preliminary Treatise on Evidence, pp. 202-204), is essentially a judicial function. . . ." (*Parsons v. Bristol Development Co.*

---

[4]See, e.g., *Bank of America v. Lallana* (1998) 19 Cal.4th 203, 224 [77 Cal.Rptr.2d 910, 960 P.2d 1133] (" 'Whether a sale is conducted in a commercially reasonable manner is a question of fact and the answer depends on all of the circumstances existing at the time of the sale.' "); *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1488 [77 Cal.Rptr.2d 479] ("What constitutes a reasonable time presents a question of fact which depends on the circumstances of the particular case."); *Furla v. Jon Douglas Co.* (1998) 65 Cal.App.4th 1069, 1078 [76 Cal.Rptr.2d 911] ("[W]hether a plaintiff reasonably relied on a defendant's misrepresentations or failed to exercise reasonable diligence is also ordinarily a question of fact for the trier of fact."); *Crookall v. Davis, Punelli, Keathley & Willard* (1998) 65 Cal.App.4th 1048, 1067 [77 Cal.Rptr.2d 250] (whether a breach of duty occurred [i.e., whether conduct fell below the standard of reasonable care] is generally a question of fact).

[5]See, e.g., *Ford & Vlahos v. ITT Commercial Finance Corp.* (1994) 8 Cal.4th 1220, 1235 [36 Cal.Rptr.2d 464, 885 P.2d 877] (commercial reasonableness "is intensely factual" and depends upon the totality of the circumstances); *Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940 [67 Cal.Rptr.2d 454] ("[S]ubstantial evidence of reasonableness . . . requires . . . evidence of solid value which reasonably inspires confidence."); *Gifford v. J & A Holdings* (1997) 54 Cal.App.4th 996, 1003 [63 Cal.Rptr.2d 253] (commercial reasonableness "is primarily a question of fact reviewable under the substantial evidence rule"); *Fineberg v. Niekerk* (1985) 175 Cal.App.3d 935, 942 [221 Cal.Rptr. 106] (trial court's determination of a reasonable time is binding if supported by substantial evidence).

(1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Although the "written instrument" referred to in this quotation was a contract, not a trustee's notice, we believe the situation is analogous because both trustee notices and written contracts are documents and both types of documents must meet certain statutory standards.

Moreover, as explained below, we believe that the Probate Code requires a conspicuous warning in the trustee's notice. In the commercial context, disclaimers of implied warranties must be conspicuous by statute. (Cal. U. Com. Code, § 2316, subd. (2).) Evaluating whether a disclaimer is conspicuous is a question of law (*id.*, § 1201, subd. (10)), and an appellate court can determine the issue of conspicuousness just as easily as a trial court (see *Dorman v. International Harvester Co.* (1975) 46 Cal.App.3d 11, 18 [120 Cal.Rptr. 516]). This analogy provides further support that the appropriate standard of review when evaluating the conspicuousness of a trustee's notice is de novo.

In short, there is no evidentiary conflict in this case, issues of law predominate, and the statutory standard applies to a document, not conduct. We therefore review the trial court's ruling de novo.

*The Reasonable Equivalent Standard of Section 16061.7*

 Appellants claim that because the trustee sent an improper and legally insufficient notice of the change in trust status, the court erred in finding appellants' petition contesting the trust untimely. We agree.

When a trust becomes irrevocable, the trustee must notify each beneficiary and heir of the change in status. (§ 16061.7.) The beneficiaries and heirs then have 120 days to file an action contesting the trust. (§ 16061.8.) This 120-day statute of limitations does not begin to run until the trustee serves a notice of the change in trust status that complies with section 16061.7, subdivision (g). (See §§ 16061.7 & 16061.8.)

Section 16061.7 subdivision (g) provides: "Unless the notification by trustee is served only because of a change of the trustee, the notification by trustee shall also include a warning, *set out in a separate paragraph in not less than 10-point boldfaced type, or a reasonable equivalent thereof,* that states as follows:

" 'You may not bring an action to contest the trust more than 120 days from the date this notification by the trustee is served upon you or 60 days from the day on which a copy of the terms of the trust is mailed or

personally delivered to you in response to your request during that 120-day period, whichever is later.' " (Italics added.)

Here, it is undisputed that the warning in the trustee's notice is printed in a separate paragraph in greater than 10-point type, but not in boldface type. The question then becomes whether the text of the warning qualifies as the "reasonable equivalent" of 10-point boldface type.

The usual, ordinary meaning of the term "bold" is "standing out prominently: markedly conspicuous : EYE-CATCHING . . ." (Webster's 3d New Internat. Dict. (3d ed. 1986) p. 248.) The term "bold" is synonymous with "[r]eadily attracting notice: arresting, conspicuous, eye-catching, marked, noticeable, observable, outstanding, pointed, prominent, pronounced, remarkable, salient, signal, striking." (Roget's II: The New Thesaurus (3d ed. 1995) p. 106.) "Boldface" type has been defined as type cut with thick heavy lines in order to render the writing conspicuous. (See American Heritage Dict. (1981) p. 148, col. 1.) Thus, based on the plain meaning of the statute, we believe the purpose of the boldface type requirement is to ensure that the language is conspicuous. Legibility alone is insufficient.

The advisement of the limitations period at issue here, although set forth in a separate paragraph, is in the same 12-point type as the rest of the notice. The warning is not bolded,[6] italicized, underlined, printed in all capital letters, or differentiated by type size or color. Although legible, there is nothing to draw the reader's attention to the important operative language or distinguish it from the rest of the information provided in the notice. While this paragraph is separated from the previous paragraph with triple spacing, the same spacing separates all six paragraphs contained in the body of the document.

In the commercial context, conspicuous means "so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." (Cal. U. Com. Code, § 1201, subd. (10).) *Dorman v. International Harvester Co.*, *supra*, 46 Cal.App.3d 11, applied this standard to a disclaimer of implied warranties provision in a contract, and found the disclaimer deficient. (*Id.* at p. 19.) The court explained: "Although the disclaimer provision was printed in slightly larger type face than was the preceding paragraph of the contract, it was not in bold face type, and we are of the opinion that it was not sufficiently conspicuous . . . . The slightly

---

[6]Other terms in the notice are in boldface type, which further detracts from the paragraph advising of the statute of limitations.

larger type face and location of the disclaimer paragraph are not conclusive. . . . ' "[W]hile there is some slight contrasting set-off, this is not sufficient. A provision is not conspicuous when there is only a slight contrast with the balance of the instrument." ' . . . In order to have a valid disclaimer provision, it must be in clear and distinct language and prominently set forth in large, bold print in such position as to compel notice." (46 Cal.App.3d at pp. 18-19, citations and italics omitted.)

Similarly, the warning paragraph in the trustee's notice at issue here was in a separate paragraph but not in boldface type. Given that the slightly larger type in *Dorman* was insufficient to render a provision conspicuous, the warning here printed in the same type as the rest of the document also fails to compel notice.

Another analogous situation involves express releases from future liability, which must be easily readable and conspicuous. (See *Conservatorship of Link* (1984) 158 Cal.App.3d 138, 141-142 [205 Cal.Rptr. 513].) This means that the exculpatory clause must be differentiated from other text, cannot appear in the same typeface as the rest of the document, must attract the reader's attention and cannot "be buried in a lengthy document, hidden among other verbiage, or so encumbered with other provisions as to be difficult to find. . . ." (*Leon v. Family Fitness Center (# 107), Inc.* (1998) 61 Cal.App.4th 1227, 1232 [71 Cal.Rptr.2d 923], citation omitted.) In finding that a release clause did not meet this standard, the *Leon* court reasoned: "Here, the release clause, although a separate paragraph, is in undifferentiated type located in the middle of a document. Although some other portions are printed in bold and in enlarged print, the releasing paragraph . . . contains no bold lettering, and is in the same smaller font size as is most of the document. No physical characteristic distinguishes the exculpatory clause from the remainder of the document." (*Leon, supra,* 61 Cal.App.4th at p. 1233.) Although the *Leon* court did not decide whether 8-point type was sufficient, the court did hold that point size is not the only factor in determining whether the text is both legible and conspicuous. (See *id.* at p. 1232.)

Likewise, the warning in the trustee's notice here, although set forth in a separate paragraph, is in the same type as the remainder of the document. As in *Leon*, the critical paragraph contained no bold lettering, while portions of the remainder of the document contained boldfaced material, thereby diverting the reader's attention away from the important material. Additionally, the heading of the instant notice is in a larger font size, capitalized and underlined; other portions of the text are also underlined.

 "The Legislature is presumed to have knowledge of existing judicial decisions when it enacts and amends legislation." (*Flannery v. California*

*Highway Patrol* (1998) 61 Cal.App.4th 629, 642 [71 Cal.Rptr.2d 632]; *Estate of McDill* (1975) 14 Cal.3d 831, 837-839 [122 Cal.Rptr. 754, 537 P.2d 874] [It is assumed that the Legislature has existing laws in mind when it enacts a statute, and that it has knowledge of existing judicial decisions construing the affected statutes]; *Keeler v. Superior Court* (1970) 2 Cal.3d 619, 625 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420] ["It will be presumed, of course, that in enacting a statute the Legislature was familiar with the relevant rules of the common law."].)

■■■ *Dorman v. International Harvester Co., supra,* 46 Cal.App.3d 11, and *Leon v. Family Fitness Center (# 107), Inc., supra,* 61 Cal.App.4th 1227, represented the state of the law concerning conspicuousness at the time the Legislature enacted section 16061.7. In light of these rulings, we believe that the Legislature intended to specify a standard, in enacting section 16061.7, that would clearly qualify as legible and conspicuous (i.e., a separate paragraph, 10-point boldface type). The separate paragraph ensures that the information is not buried, the 10-point type ensures legibility, and the boldface ensures conspicuousness. At the same time, the Legislature provided the "reasonable equivalent" standard in order to incorporate some flexibility and in recognition of the many printing options available today. The focus of our inquiry here is whether the operative paragraph was made conspicuous in some manner equivalent to emboldening the print of the paragraph.

The trustee argues that the notice met the statute's "reasonable equivalent" test because the notice was (1) printed in 12-point type, (2) contained within a separate paragraph set off from the preceding paragraph by a triple space, (3) located at the bottom of the page, and (4) clearly stood out. Although 12-point type is larger than 10-point type, the larger point size does not compel notice or catch the reader's eye because the remainder of the text of the notice is in the same point size. Nor does the separate paragraph render the text sufficiently prominent; because the notice consists of several individual paragraphs, there is nothing to draw a reader's attention to the warning paragraph. Similarly, the paragraph's location as the final paragraph on the page does not render the warning sufficiently distinctive because there is no basis to conclude that locating information at the bottom of a page makes the information more conspicuous. Thus, although legible, the warning did not clearly stand out from the remainder of the notice as required by statute.

Additionally, the trustee claims the appellants should be deemed to have had notice of the limitations period because the notice was simultaneously

mailed on July 21, 1998, to Bruce C. Chester, appellants' attorney.[7] Although an attorney's knowledge is imputed to his client (*Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d. 1223, 1231 [282 Cal.Rptr. 43]), the trustee provides no legal authority to support the proposition that serving a statutorily defective notice on an attorney somehow cures the deficiencies in the notice.

We conclude that the trustee's notice warning of the statute of limitations for contesting the trust did not satisfy the "reasonable equivalent" standard of section 16061.7 subdivision (g).

### DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to appellants.

Harris, J., and Levy, J., concurred.

A petition for a rehearing was denied November 16, 2000, and respondent's petition for review by the Supreme Court was denied February 14, 2001.

---

[7]On appeal, appellants claim that there is no evidence in the record that Bruce C. Chester was their attorney at the time the notice was served. For purposes of our analysis, we assume he was appellants' attorney at the time, a fact unchallenged in the trial court on the record before us.

APPENDIX A

**NOTIFICATION OF TRUST STATUS CHANGE**
**of the**
**THE VERNON EUGENE WILKINS AND**
**ROSIELEE WILKINS FAMILY TRUST**

1. Settlors:
 (a) Vernon Eugene Wilkins
 (b) Rosielee Wilkins

 Trust Date: July 10, 1995
 First Amendment to Trust Date: October 9, 1997

2. Trustee:
 Judy Wilkins
 1452 Goshen Avenue
 Clovis, CA 93611
 (209) 297-1588

3. Principal Place of Administration:
 1452 Goshen Avenue
 Clovis, CA 93611

4. Additional Information:
 NONE

5. You are entitled, upon reasonable request to the Trustee, to receive from the Trustee a true and complete copy of the terms of the trust. A true and complete copy of the **Declaration of Trust** and the **Amendment to Declaration of Trust** are attached.

6. You may not bring an action to contest the trust more than 120 days from the date this notification by the Trustee is served upon you or 60 days from the day on which a copy of the terms of the Trust is mailed or personally delivered to you in response to your request during that 120 day period, whichever is later.