Filed 9/23/21  Estate of Spears CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| Estate of JULIA SPEARS, Deceased. | C089686 |
| JEFF SPEARS, as Executor, etc., | (Super. Ct. No. STK-PR-EST-20160000-758) |
| Petitioner and Appellant, | |
| v. | |
| MARY KRAMER, as Executor, etc., | |
| Claimant and Respondent. | |

In 1986, James Spears (James) and Julia Spears (Julia) executed reciprocal wills, each leaving to the surviving spouse all of their property.[1]  In 2010, James executed a new will expressly disinheriting Julia and leaving his interest in three specified real

---

[1]  Because many of the relevant family members share the same surname, we refer to all family members by their first names.

properties to his daughter, respondent Mary Kramer, and granddaughter, Heidi Zerbe. Mary knew that the will existed, but she did not know the details of the will's contents. Following James' death in 2011, Julia recorded a community property declaration, purporting to transfer James' interest in the property to herself as the surviving spouse. Julia died later in 2011.

In 2016, appellant Jeff Spears petitioned for probate to administer Julia's estate. At the hearing on Jeff's petition, respondent Mary obtained a copy of James' 2010 will. She subsequently became aware that James had left her and Heidi his interest in the properties at issue. Thereafter, Mary and Jeff filed dueling petitions seeking court orders establishing that James' interest in those properties had been left to Mary and Heidi (Mary's petition) or to Julia as surviving spouse (Jeff's petition). Jeff asserted that Mary's claims were barred by the one-year statute of limitations set forth in Code of Civil Procedure section 366.2, subdivision (a).[2] The probate court granted Mary's petition and denied Jeff's.

On appeal, Jeff contends that Mary's claims are barred by multiple statutes of limitations and the equitable doctrine of laches. Disagreeing, we affirm.

## FACTS AND PROCEEDINGS

*Factual Background*

James Spears and Julia Spears were married and parented four children: Mary Kramer, Tom Spears, Robert Spears, and Jeff Spears. Heidi Zerbe is Mary's daughter. During their marriage, James and Julia owned three residential properties as community property: one on Vine Street in Lodi (Vine Street property); one on Olive Court in Lodi (Olive Court property); and one on Funston Avenue in Stockton (Funston Avenue property) (collectively, the properties).

---

[2] Further undesignated statutory references are to the Code of Civil Procedure.

2

In July 1986, Julia and James executed joint reciprocal wills, each leaving the entirety of their assets to the surviving spouse and then to the children equally. James executed a new will in June 2010. James' 2010 will named Mary as both executor and the beneficiary of his interest in the Vine Street and Funston Avenue properties, and it named Heidi as the beneficiary of his interest in the Olive Court property. The 2010 will expressly revoked all prior wills and disinherited Julia, Jeff, and Robert.[3]

James died in March 2011. Mary acknowledged that she was aware James had prepared another will, and after his death she attempted unsuccessfully to obtain a copy from his grandson, who had driven James to the attorney's office to prepare the will and who lived with James at the time of his death. In April 2011, James' will was lodged with the court, as required by statute. (Prob. Code, § 8200.)

In June 2011, Julia executed and recorded a community property declaration, which had the purported effect of transferring James' one-half community property interest in the three properties to herself as the surviving spouse. Julia died in December 2011.

*Procedural History*

In July 2016, nearly five years after Julia's death, Jeff filed a petition for probate of Julia's will. In September 2016, the attorney who prepared the 2010 will provided a copy of that will to Heidi, but she did not share this fact with Mary, as they were estranged. Later that month, at the hearing on the petition for probate, Heidi gave the 2010 will to Mary. Mary asserted that this was the first time she learned that she was the sole beneficiary of James' one-half interest in the Vine Street and Funston Avenue properties. At that hearing, Jeff was appointed to serve as the executor of Julia's estate and acted in that capacity throughout the relevant proceedings.

---

[3]  Tom was deceased by that time.

In November 2016, Mary and Heidi executed and recorded notice of a claim of interest in the properties.

In January 2017, Jeff filed two petitions under Probate Code section 850, in part seeking to confirm the properties as assets of Julia's estate.[4] Jeff's petitions also asserted that Mary and Heidi's claims to the properties were time barred.

One week later, Mary filed a petition for probate of the 2010 will. Mary was appointed to serve as the executor of James' estate and acted in that capacity throughout the relevant proceedings. In March, Mary and Heidi objected to the Probate Code section 850 petition Jeff had filed in January.

In July 2017, Mary filed a petition under Probate Code section 850 to establish that the three real properties were assets of James' estate, and she sought an order determining that James' one-half interest in the Vine Street, Funston Avenue, and Olive Court properties should be distributed according to the terms of the 2010 will.

In August, Jeff filed an objection to Mary's Probate Code section 850 petition. He argued Mary's claims were barred by the statute of limitations and that Mary was barred from seeking relief based on her unclean hands.

The probate court granted Mary's petition and denied Jeff's. As we will discuss in greater detail *post*, the court rejected Jeff's argument that Mary's petition was untimely. The court entered judgment in favor of Mary and Heidi on March 6, 2019. Jeff timely appealed.

---

[4] Probate Code section 850, subdivision (a)(2)(C) authorizes an estate's personal representative to file a petition requesting that the court make an order that "the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another."

# DISCUSSION

## I

### *Statutes of Limitations*

Jeff contends that Mary's petition is barred by the one-year statute of limitations set forth in section 366.2, which is a "general statute of limitations for all claims against a decedent." (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 255.) Section 366.2, subdivision (a) provides: "If a person against whom an action may be brought *on a liability of the person*, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." (Italics added.) Accordingly, Jeff asserts that the statute of limitations began to run when Julia died in December 2011.

Alternatively, Jeff argues that Mary's petition is barred by the four-year statute of limitations applicable to the bringing of a quiet title premised upon an action for cancellation of written instrument. (§ 343.) He asserts that Mary's petition sought to cancel Julia's community property declaration, and therefore the statute of limitations began to run when Julia recorded the community property declaration on June 9, 2011.

As we will explain, we disagree with Jeff's contentions.

A. *Standard of Review*

Resolution of the statute of limitations issue is normally a question of fact. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810.) "But when 'the relevant facts are not in dispute, the application of the statute of limitations may be decided as a question of law.' " (*Sahadi v. Scheaffer* (2007) 155 Cal.App.4th 704, 713.) The question of when Mary's cause of action accrued is a mixed question of law and fact. (*Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 406.)

"Whether a party is barred by the one-year statute of limitations applicable to claims of creditors against a decedent's estate is a legal issue subject to review de novo." (*Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287, 292.)

B. *Section 366.2's General Statute of Limitations*

In *Estate of Yool* (2007) 151 Cal.App.4th 867 (*Yool*), the appellate court addressed the circumstances in which the general statute of limitations set forth in section 366.2 applies. There, the special administrator of her deceased mother's estate brought an action to determine title to the decedent's property. The court recognized that the plain language of section 366.2 required it to determine whether the claim framed by the petition concerned the "*personal liability* of the decedent." (*Yool*, at p. 875.) The court defined "[l]iability of the person, or 'personal liability' " as " '[l]iability for which one is personally accountable and for which a wronged party can seek satisfaction out of the wrongdoer's personal assets.' " (*Id.* at p. 875, quoting Black's Law Dict. (8th ed. 2004) p. 993.) The court further recognized that the legislative history of section 366.2 "makes it clear that the provision pertains to debts, that is, to claims resulting from the relationship between the debtor and the creditor" and was " 'intended to apply *in any action on a debt of a decedent*.' " (*Id.* at p. 876.)

The court in *Yool* further observed that the definition of " 'claim' " as used in Probate Code section 9000 "closely tracks the 'liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued' language of . . . section 366.2," and that definition "expressly *excludes* from its ambit any dispute regarding decedent's title to specific property alleged to be part of the estate." (*Yool*, *supra*, 151 Cal.App.4th at p. 876, citing Prob. Code, § 9000, subds. (a), (b).) The court recognized that "section 366.2 and [Prob. Code] section 9000 are intertwined; each is integral to the procedural framework regulating the timing of actions and the filing of claims by creditors on the personal liability of a decedent." (*Ibid.*)

6

There is no basis on which to conclude that the petitions here, which involve a dispute over the titles to three real properties, concern Julia's "personal liability." Jeff argues that Julia asserted absolute ownership of the properties in June 2011, when she recorded the community property declaration, and thereafter Mary had the right to bring an " 'action' " against Julia. But Jeff does not argue that any such "action" would involve Julia's *personal liability*, and we see no basis upon which to distinguish *Yool*. Accordingly, we conclude the statute of limitations set forth in section 366.2 does not apply to or bar Mary's claims.

In the last paragraph of his argument regarding section 366.2, Jeff suggests that the probate court's decision regarding the failure of that section to bar Mary's claim was premised on the fact that Mary did not have access to James' will until 2016, and thus that is when the one-year statute would begin tolling. But the court ruled that section 366.2 did not apply to the action, not merely that the action commenced within the prescribed time period of one year. In fact, the court discussed and applied the holding in *Yool*, *supra*, 151 Cal.App.4th 867, concluding: "Consequently, [§ 366.2, subd. (a)] does not act as a limitation to [the Prob. Code, § 850 petition] filed by James' Estate." The court then, separately, determined that Mary's petition was timely because she first gained access to the 2010 will in September 2016, as we discuss *post*. Accordingly, to the extent Jeff attempts to raise a claim on appeal based on the application of the discovery rule, he has forfeited that claim. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"].)

C. *Sections 343 and 338, Subdivision (d) Statutes of Limitations*

The parties disagree on which statute of limitations applies to Mary's petition, as we next explain. Because the Legislature has not established a specific statute of limitations for quiet title actions, courts refer to the nature, or "gravamen," of the underlying theory of relief to determine the applicable statute of limitations. (*Salazar v.*

*Thomas* (2015) 236 Cal.App.4th 467, 476; § 343.)  Jeff contends the gravamen of Mary's petition is the cancellation of Julia's community property declaration, which occurred on June 9, 2011, and would be subject to the four-year limitations period set forth in the catchall provision of section 343.  (*Moss v. Moss* (1942) 20 Cal.2d 640, 644-645.)

Mary, on the other hand, contends that her petition was predicated on Julia's mistaken belief that she was entitled to claim James' share of their community property after his death.  She argues the applicable statute of limitations is the three-year limitations period provided for in section 338, subdivision (d).  (See *Zakaessian v. Zakaessian* (1945) 70 Cal.App.2d 721, 725 [ordinarily a suit to cancel an instrument is governed by § 343, but where gravamen of the cause of action involves fraud or mistake, § 338, subd. (d) is the applicable statute of limitations.)  Section 338, subdivision (d) codifies the discovery rule, "providing that a cause of action for fraud [or mistake] 'is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.' "  (*Brandon G. v. Gray* (2003) 111 Cal.App.4th 29, 35.)

" ' "Neither the caption, form, nor prayer of the complaint will be deemed conclusive in determining the nature of the liability from which the cause of action flows. On the contrary, the true nature of the action will be ascertained from the basic facts a posteriori." ' " (*Estate of Young* (2008) 160 Cal.App.4th 62, 77.)  Thus, we consider not only the gravamen or purpose of Mary's petition, but also her allegation that the claim did not commence running until 2016 due to a mistake.  (*Ibid*.)

Here, the basis for Mary's petition is Julia's mistaken belief that she was entitled to James' interest in the community properties after his death.  Mary's petition stated: "In the Community Property Declaration, Julia purportedly transfers James' one-half community property interest in the Olive Court Property, the Vine Street Property, and the Funston Street Property to herself as the surviving spouse.  Petitioner is informed and believes that Julia was ignorant of James' Will and executed and recorded the

Community Property Declaration under the mistaken belief that James did not have a will." Later, Mary again asserted: "Title to James' one-half community property interest is currently being held by the Estate of Julia Spears, as a result of the mistakenly-filed Community Property Declaration." Accordingly, while Mary's petition could be characterized as no more than a quest to cancel an instrument, Julia's transfer of James' property to herself, the gravamen of Mary's petition involves Julia's mistake that she was entitled to do so. Therefore, the statute of limitations set forth in section 338, subdivision (d) is the applicable statute of limitations.

Based on the application of the discovery rule codified in section 338, subdivision (d), the probate court concluded that Mary's claims to the properties accrued in September 2016, which was within the applicable three-year limitations period. As we discussed *ante*, Jeff does not effectively raise a claim regarding the application of the discovery rule here, and therefore we do not consider whether the court properly applied that rule.

II

*Laches*

Finally, Jeff contends that Mary's claims are barred by the doctrine of laches. "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that 'equity aids the vigilant, not those who sleep on their rights.' " (*Magic Kitchen LLC v. Good Things Int'l Ltd.* (2007) 153 Cal.App.4th 1144, 1156.) " 'The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' " (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 68.) The existence of laches is a question of fact to be determined by the probate court, "and in the absence of a palpable abuse of discretion the [probate] court's finding on that issue will not be disturbed on appeal." (*Millbrae Assn. for Residential Survival v. City of Millbrae* (1968) 262

9

Cal.App.2d 222, 247.)[5] " 'Where a [probate] court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the correct result for the decision of the [probate] court.' " " 'The burden is on the complaining party to establish abuse of discretion, and the showing on appeal is insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion.' " (*McClain v. Kissler* (2019) 39 Cal.App.5th 399, 414.)

The probate court found that Mary did not have access to the 2010 will until September 2016, and therefore it concluded that Mary's actions were timely. The court acknowledged that the 2010 will was lodged with the court in April 2011, and while the court acknowledged it was a "close call," it concluded that an ordinary citizen would not be aware of the possibility that another will was filed with the court and would not have known to check with the court for the presence of a new will. Accordingly, the court concluded that Mary was without a reasonable opportunity to obtain the 2010 will before September 2016. Specifically regarding the doctrine of laches, the court concluded that Jeff's claim that Mary failed to act quickly enough "is tempered by the fact that it took almost five years to take any action on Julia's Will."

Jeff urges us to disagree with the probate court's factual findings, but he does not argue why these findings constitute an abuse of discretion. He reasserts the facts that were already considered by the court, and he argues on appeal, as he did before the probate court, that Mary's efforts to obtain the 2010 will were insufficient, and she

---

[5] Jeff appears to argue that we should review his laches claim de novo. In support, he relies on *Harustak v. Wilkins* (2000) 84 Cal.App.4th 208 at page 213 for the general propositions that we may apply a "flexible de novo approach" where "the outcome of an appeal turns on the meaning of statutory phrases," and we should apply a de novo standard of review where there are mixed questions of law and fact but where legal issues predominate. But *Harustak* did not involve a claim of laches, and Jeff offers no authority to support his contention that we should review his claim regarding the applicability of the doctrine of laches de novo.

waited too long to take action.  The court rejected these arguments, and Jeff provides no basis to conclude the court's findings and decision based thereon constituted an abuse of discretion.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondents.  (Cal. Rules of Court, rule 8.278(a).)

/s/
Duarte, J.

We concur:


/s/
Robie, Acting P. J.


/s/
Mauro, J.

11