Filed 9/21/22  Keading v. Keading CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KENTON KEADING,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>HILJA M. KEADING, et al.,<br><br>        Defendant and Respondent. | A159795<br><br>(Contra Costa County<br>Super. Ct. No. MSP16-00402) |

Kenton Keading[1] was ordered disinherited as a beneficiary under the Survivor's Trust of the Keading Family Trust after he violated a no contest clause by bringing two trust contests that were untimely and therefore without probable cause.  On appeal, Kenton argues the applicable 120-day statute of limitations was not triggered due to defects in the required statutory notification that was served in March 2016.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A detailed discussion of the factual and procedural history of the dispute between siblings Kenton and Hilja M. Keading, which we adopt and incorporate by reference, is set out in our partially published opinion in *Keading v. Keading* (2021) 60 Cal.App.5th 1115 (*Keading I*) and in our

---

[1]     Due to the commonality of the Keading last name, we refer to the Keading family members by their first names.  No disrespect is intended.

1

unpublished opinions in *Keading v. Keading* (Mar. 30, 2021, A157476) (nonpub. opn.) (*Keading II*) and *Keading v. Keading* (July 30, 2021, A158590) (nonpub. opn.) (*Keading III*).

Kenton and Hilja were the beneficiaries of a family trust created by their parents, Lucille and Lewis. The main trust asset was the family residence in El Sobrante. (*Keading I, supra*, 60 Cal.App.5th at p. 1119.) Under the original trust, the siblings were to split the trust assets equally after their parents' deaths. (*Ibid.*) Over the years, Hilja and her parents became estranged, and in 2011, Lucille and Lewis amended the trust to give Hilja only an investment account, with Kenton receiving the remainder of the trust. (*Ibid.*) By 2014, the parents and Hilja had reconciled, but when the parents amended the trust again in February 2015, they essentially restated the terms of the 2011 amendment. (*Ibid.*)

After Lucille's death in September 2015, surviving settlor Lewis executed a final amendment to the Survivor's Trust of the Keading Family Trust in October 2015 providing for "an equal division" of the trust assets between the siblings. (*Keading I, supra*, 60 Cal.App.5th at p. 1120.) Like the original trust instrument, the October 2015 amendment contained a no contest clause stating in relevant part: "If any beneficiary under this Amendment, the Wills or the Trust of the settlors . . . directly or indirectly does any of the following acts, then the right of that person to take any interest given to him or her by such instruments shall be void, and any gift or other interest in the trust property to which the beneficiary would otherwise have been entitled shall pass as if he or she had predeceased the Trustor: [¶] Without probable cause challenges the validity of such instruments on any of the following grounds: [¶] . . . [¶] (c) Lack of capacity; [¶] (d) Menace, duress, fraud, or undue influence."

**A. Hilja's Petition to Remove Kenton as Trustee**

After Lewis passed away, Hilja filed an ex parte petition in March 2016 in the Contra Costa County probate court, case No. MSP16-00402, seeking Kenton's removal as trustee, appointment of a successor trustee, and recovery of trust assets (the "402 action"). Hilja alleged, among other things, that Kenton fraudulently executed and recorded a deed purporting to transfer the family residence and adjoining property from the trust to himself and Lewis as joint tenants.

On March 9, 2016, Hilja, as "Successor Co-Trustee," served Kenton with the requisite notification under Probate Code section 16061.7.[2] The notification contained five separately-numbered paragraphs. As relevant here, the first two paragraphs identified both Hilja's address and the address of the principal place of business of the trust's administration as "c/o Hartog, Baer & Hand, APC, 4 Orinda Way, Suite 250B, Orinda, CA 94563." In the fourth paragraph, the following language appeared in boldfaced type: "You may not bring an action to contest the Trust more than 120 days from the date this notification is served upon you or 60 days from the day on which a copy of the terms of the Trust is mailed or personally delivered to you in response to your request during that 120-day period, whichever is later."

Attached to the section 16061.7 notification was a proof of service in which the declarant stated that "[o]n March 16, 2016, I caused to be served the foregoing document [¶] . . . [¶] by delivering a true copy thereof to the interested parties as follows in the manner as follows," and thereafter listing two El Sobrante addresses for Kenton. The proof of service left blank the boxes for indicating what method of service was used (e.g., mail, facsimile, personal service).

---

[2] Further unspecified section references are to the Probate Code.

3

In May 2016, Kenton, through counsel, filed an "Objection and Response" to Hilja's petition. Kenton asserted, among other things, the affirmative defenses of "Financial Abuse and Breach of Fiduciary Duty" and "Undue Influence," alleging that Hilja was barred from obtaining any of her requested relief because she breached her fiduciary duties and exerted undue influence over Lewis in an attempt to increase her share in the trust. Attached as an exhibit to the objection and response statement was a copy of Hilja's section 16061.7 notice.

The probate court held a trial on Hilja's petition in June and July 2017 and issued a statement of decision in August 2017 finding Kenton liable for elder abuse and breach of fiduciary duty. Final judgment was entered against Kenton in February 2018.[3]

**B. Kenton's Petition to Invalidate the October 2015 Amendment**

In September 2018, Kenton filed a petition in propria persona in the 402 action seeking to invalidate the October 2015 trust amendment. Kenton alleged that Hilja unduly influenced Lewis to execute the amendment; that the amendment misstated facts; and that the amendment sought to combine the trust assets in a manner that violated the terms of the original trust and the bypass trust, neither of which could be modified after Lucille's death.

Kenton also asserted that his petition was not time-barred under the 120-day statute of limitations of section 16061.8 because Hilja's section 16061.7 notice was technically defective in several respects. According to Kenton, the "warning" language required under section 16061.7, subdivision (h), was not sufficiently conspicuous; the notice failed to correctly report the " 'principal place of administration of the trust' "; the notice did not correctly

---

[3]    In *Keading I*, this court affirmed the judgment in favor of Hilja in the 402 action. (See *Keading I*, *supra*, 60 Cal.App.5th at pp. 1130–1131.)

4

report the address and telephone number of co-trustee Hilja; and the notice was not properly served because no method of service was acknowledged on the proof of service.

## C. Kenton's Civil Action

Meanwhile, in February 2019, Kenton filed a separate civil action, case No. C19-00331 (the 331 action) asserting one cause of action against Hilja for elder abuse.[4]  Like his September 2018 petition in the 402 action, Kenton's elder abuse complaint alleged that Hilja had procured the October 2015 trust amendment by unduly influencing Lewis while acting as his caregiver. Kenton sought compensatory damages in the amount of $766,221.

Hilja demurred to Kenton's complaint on the grounds that the trial court lacked subject matter jurisdiction; the action was barred by the collateral estoppel effect of the judgment in the 402 action; the action was barred by the statute of limitations of section 16061.8; and the action was barred by the compulsory cross-complaint statute (Code Civ. Proc., § 426.30, subd. (a)).  In June 2019, the trial court sustained Hilja's demurrer without leave to amend.  Although the court did not find Kenton's elder abuse claim to be barred by collateral estoppel, it determined the claim was a compulsory cross-claim that had to be asserted in the 402 action because the two actions "concerned the same transactional nucleus of facts."  The court further concluded it lacked jurisdiction to hear Kenton's elder abuse claim because the validity of the trust provisions fell under the exclusive jurisdiction of the probate court.

---

[4]     The complaint and other relevant filings in the 331 action were the subject of Hilja's request for judicial notice, which we deferred for decision with the merits of the appeal.  We now grant the request.  (Evid. Code, § 452, subd. (d).)

Additionally, the trial court ruled that Kenton's elder abuse claim was time-barred under section 16061.8.  Rejecting Kenton's contention that the statute of limitations was not triggered by the purportedly defective notice, the court found that "[t]he notification met all statutory requirements, including warning of the 120-day limit on contests printed in a separate paragraph in 10-point boldface type, and was thus effective.  [Citation.] [Kenton's] argument at the hearing that this notice is insufficiently conspicuous because it is in the same typeface as the surrounding text lacks merit given that it is the only body text in bold-face type.  In any event, [Kenton] waived any objection to the notice when he attached it as an exhibit to his 'Objection and Response' to [Hilja]'s ex parte petition to suspend and remove him as trustee of the Keading Family Trust.  [Citation.]  The statutory period expired on July 13, 2016.  [Kenton's] Complaint was not filed within the statutory period."

### D. Vexatious Litigant Determination

In the 402 action, the probate court granted Hilja's motion to declare Kenton a vexatious litigant.  The court issued a prefiling order requiring Kenton to obtain leave of court to file new litigation in the courts of this state, and also ordered Kenton to furnish $100,000 security for each pending proceeding or action or face dismissal without prejudice.  The court's decision to require Kenton to post security was based on its examination of Kenton's pending cases, including his September 2018 petition in the 402 action and his elder abuse complaint in the 331 action, and its determination that there was no reasonable probability Kenton would prevail in these matters.  Specifically, the court found that Kenton's September 2018 petition "should have been, but was not, filed as a counter-claim related to" Hilja's 2016 petition proceedings and was therefore "collaterally estopped."  Additionally,

6

the court concluded Kenton's September 2018 petition was "time barred pursuant to Probate Code section 16061.8." Finally, the court found that Kenton's elder abuse complaint in the 331 action "faces the same infirmities" in that "it is collaterally estopped and time barred."[5]

In June 2019, before the scheduled hearing date on Kenton's September 2018 petition, Hilja filed a notice of expiration of the deadline for Kenton to post security. In response, the probate court issued a written order dismissing "with prejudice" Kenton's September 2018 petition in the 402 action for his failure to furnish the security. (Capitalization omitted.)[6]

### E. Hilja's Petition to Disinherit Kenton

In October 2019, Hilja filed a petition in the 402 action seeking an order disinheriting Kenton as a beneficiary of the Survivor's Trust for violating the no contest clause of the October 2015 trust amendment.

In January 2020, the probate court ruled that Kenton violated the no contest clause by filing his direct contests in the 402 and 331 actions without probable cause. The court cited two independent grounds for its finding that Kenton lacked probable cause to bring either contest: (1) the 120-day statute of limitations of section 16061.8; and (2) the compulsory cross-complaint statute (Code Civ. Proc., § 426.30), which required Kenton to assert his claim challenging the October 2015 amendment's validity as a compulsory cross-

---

[5]    This court affirmed the vexatious litigant order in *Keading II*. (*Keading II*, *supra*, A157476.)

[6]    In *Keading III*, this court held that although the probate court appeared to have erroneously dismissed Kenton's 2018 petition with prejudice, Kenton failed to establish that the error resulted in a miscarriage of justice. (*Keading III*, *supra*, A158590.)

claim to Hilja's petition. This timely appeal followed. (Capitalization omitted.)[7]

## DISCUSSION

"In the absence of disputed facts, we review a court's application of a no contest clause de novo. [Citation.] De novo review is equally applicable to the legal question of whether a statute of limitations applies." (*Meiri v. Shamtoubi* (2022) 81 Cal.App.5th 606, 614 (*Meiri*).) No contest clauses are "strictly construed" (§ 21312), and Probate Code sections dealing with no contest clauses are applied "notwithstanding a contrary provision in the instrument" (§ 21314).

A no contest clause is enforceable against "[a] direct contest that is brought without probable cause." (§ 21311, subd. (a)(1); *Key v. Tyler* (2019) 34 Cal.App.5th 505, 517.) A " '[c]ontest' " means "a pleading filed with the court by a beneficiary that would result in a penalty under a no contest clause, if the no contest clause is enforced." (§ 21310, subd. (a).) " 'Direct contest' means a contest that alleges the invalidity of a protected instrument or one or more of its terms, based on one or more of the following grounds: [¶] . . . [¶] (3) Lack of capacity. [¶] (4) Menace, duress, fraud, or undue influence." (*Id.*, subd. (b).) " 'Pleading' means a petition, complaint, cross-complaint, objection, answer, response, or claim." (*Id.*, subd. (d).) " 'Protected

---

7       During the pendency of this appeal, Hilja moved to dismiss the appeal on the ground that Kenton's failure to challenge one of the independent and dispositive bases supporting the probate court's order constituted abandonment of any argument that the order is reversible on that ground. Meanwhile, Kenton moved for sanctions against Hilja's attorneys, arguing that the proposed orders they prepared on the vexatious litigant motion and the disinheritance petition misrepresented the bases for the probate court's decisions. We denied both motions.

instrument' " is defined in relevant part as "[t]he instrument that contains the no contest clause." (*Id.*, subd. (e)(1).)

There is no dispute that Kenton's September 2018 petition was a direct contest against a protected instrument within the meaning of sections 21310 and 21311. The question raised in this appeal is whether the September 2018 petition was "brought without probable cause" within the meaning of section 21311, subdivision (a). "For the purposes of this section, probable cause exists if, at the time of filing a contest, the facts known to the contestant would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery." (§ 21311, subd. (b).) "The term 'reasonable likelihood' has been interpreted to mean more than merely possible, but less than 'more probable than not.' [Citations.]" (Cal. Law Revision Com. com., Deering's Ann. Prob. Code (2022 ed.) foll. § 21311.)[8] This is a "higher standard" than "that a contest be 'legally tenable.' " (*Ibid.*) This standard is intended to deter "more than just a frivolous contest" and thus is distinguishable from the more stringent probable cause standard applicable to malicious prosecution actions. (*Meiri*, *supra*, 81 Cal.App.5th at p. 618.)

Kenton does not dispute that a statute of limitations defect may establish a lack of probable cause for purposes of section 21311. (*Meiri*, *supra*, 81 Cal.App.5th at pp. 616–617.) But citing *Harustak v. Wilkins* (2000) 84 Cal.App.4th 208 (*Harustak*), he contends his September 2018 petition was timely because the 120-day clock of section 16061.8 did not begin to run at

---

[8] Though not binding, the comments of the California Law Revision Commission are entitled to substantial weight in construing a statute. (*People v. Garfield* (1985) 40 Cal.3d 192, 199.)

the time of service of Hilja's section 16061.7 notice due to multiple defects in the notice.

Even assuming Kenton's argument based on *Harustak* is legally tenable, Kenton must establish more than the nonfrivolousness of his claim. (See *Meiri, supra*, 81 Cal.App.5th at p. 618.) Rather, consistent with the language of section 21311, subdivision (b), Kenton must establish that a reasonable person would, based on the facts known at the time Kenton filed his September 2018 petition, believe there was a reasonable likelihood the probate court would grant the requested relief and disregard the apparent untimeliness of Kenton's contest. As we shall explain, Kenton has not done so.

Section 16061.8 contains the statute of limitations at issue, providing in full: "No person upon whom the notification by the trustee is served pursuant to this chapter, . . . may bring an action to contest the trust more than 120 days from the date the notification by the trustee is served upon him or her, or 60 days from the date on which a copy of the terms of the trust is delivered pursuant to Section 1215 to him or her during that 120-day period, whichever is later."

Under section 16061.7, a trustee must serve notification to the beneficiaries of an irrevocable trust under specified circumstances, including "whenever there is a change of trustee of an irrevocable trust." (§ 16061.7, subd. (a)(2).) The notification "shall" contain, among other things, "[t]he name, address, and telephone number of each trustee of the trust," and "[t]he address of the physical location where the principal place of administration of the trust is located, pursuant to Section 17002." (§ 16061.7, subd. (g)(2), (3).) If the notification is being served because a revocable trust has become irrevocable due to the death of one or more settlors or by the express terms of

10

the trust, the notification must also contain a proper warning based on the statute of limitations language in section 16061.8.  Specifically, the notification must "include a warning, set out in a separate paragraph in not less than 10-point boldface type, or a reasonable equivalent thereof, that states as follows:  [¶] 'You may not bring an action to contest the trust more than 120 days from the date this notification by the trustee is served upon you or 60 days from the date on which a copy of the terms of the trust is delivered to you during that 120-day period, whichever is later.' "  (§ 16061.7, subd. (h).)

In *Harustak*, trust beneficiaries who were served with notification of a change in trust status did not file their trust contest until 147 days after the trustee had mailed the notification.  (*Harustak*, *supra*, 84 Cal.App.4th at p. 211.)  There was no dispute that the required warning language under section 16061.7, subdivision (h), was printed in greater than 10-point type; however, all of the text in the notification was printed in 12-point type and the warning within the notification was not boldfaced.  (*Harustak*, at p. 216.)  Reasoning that the requirement of "boldface" type meant the text must be prominent and eye-catching, *Harustak* concluded the unbolded warning language—which was printed in the same 12-point type as the rest of the notification—did not sufficiently draw the reader's attention to qualify as the " 'reasonable equivalent' of 10-point boldface type" for purposes of the statute. (*Id*. at pp. 216, 218–219.)  As such, *Harustak* determined the defective notification was inadequate to start the running of the limitations period and the trust contest was deemed timely.  (*Harustak*, at p. 215.)

*Harustak* is distinguishable in several ways, not the least of which is that the notification recipients in that case did not waive the notice defects by their actions.  Here, in contrast, Kenton filed an objection and response

statement to Hilja's petition roughly two months after he was served with the section 16061.7 notice (which was attached to his papers), and he then appeared in the petition proceedings and challenged Hilja's claims on the merits at trial.[9]  In this way, Kenton waived any technical defects in the notice and proof of service.  (See *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697–698 [appearance at noticed hearing and filing of opposition on merits constitute waiver of defects or other irregularities in notice of motion and proof of service]; *Estate of Pailhe* (1952) 114 Cal.App.2d 658, 661 [heir's appearance and participation at hearing for payment of fees to administrator operated as waiver of any notice defects]; *Estate of Brainard* (1946) 76 Cal.App.2d 850, 853 [where both parties appear and contest motion, appearance is waiver of defects in notice of motion].)  Accordingly, at the time he filed his petition over two years later in September 2018, Kenton could not reasonably believe that he could avoid section 16061.8's 120-day limitations bar by relying on technical notice defects that he had already waived.

*Harustak* is distinguishable in additional ways.  The defect in *Harustak* was that the statutorily required warning language was not in boldfaced type and was otherwise not sufficiently prominent to draw the reader's attention. Here, the notification shows on its face that the warning language was conspicuously set forth in a separate paragraph in boldfaced type that is neither unduly small nor unreadable.  Although Kenton asserted in his September 2018 petition that the text of the warning was not in 10-point font

---

[9]     Any suggestion by Kenton that he did not have knowledge of the facts to support a direct contest to the October 2015 amendment at the time of the trial in the 402 action is belied by the affirmative defenses in his own objection and response statement alleging that Hilja committed financial abuse and exerted undue influence over Lewis in an attempt to increase her share in the trust.

based on a 1/72 inch scale, he did not raise it in his opposition to the disinheritance petition or with any cogent argument or citation to authority in this appeal.  (*Mangano v. Verity, Inc.* (2009) 179 Cal.App.4th 217, 222, fn. 6 [contention unsupported by substantive argument or citation to authority deemed abandoned].)

Instead, Kenton points to other purported technical defects in the notification including its failure to correctly list Hilja's address and the address of the trust's principal place of administration as called for in section 16061.7, subdivision (g).  However, because *Harustak* did not address such defects, it provided no basis for Kenton to reasonably believe that these defects would forestall the statute of limitations.  (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 332 [cases do not stand for propositions not addressed therein].)

In any event, these minor purported defects in the notification would not have given rise to a reasonable belief in a reasonable likelihood the probate court would ignore the apparent untimeliness of the September 2018 petition.

To begin with, Kenton cites no authority that a co-trustee's use of her attorneys' office address instead of her own residential address invalidates a section 16061.7 notice.  (Cf. *Estate of Pailhe*, *supra*, 114 Cal.App.2d at p. 661 [attorney's appearance on behalf of client carried with it presumption of due authority to do so].)  Moreover, in the absence of prejudice to the notification recipient, a trustee's failure to strictly comply with the information requirements of section 16061.7, subdivision (g), is insufficient to avoid a statute of limitations bar.  (See *Germino v. Hillyer* (2003) 107 Cal.App.4th 951, 956–957 (*Germino*) [despite failure to strictly adhere to section 16061.7, subdivision (g)(5), trustee's notice was adequate to commence the statutory

13

limitations period where no prejudice shown].) Here, Kenton does not contend that he did not know Hilja's residential address at the time she served her section 16061.7 notice, or that he was otherwise prejudiced in any way by her purported noncompliance with section 16061.7, subdivision (g)(2).[10]

As for "the principal place of administration of the trust," section 17002, defines this term to mean "the usual place where the day-to-day activity of the trust is carried on by the trustee or its representative who is primarily responsible for the administration of the trust." (§ 17002, subd. (a).) Section 17002, subdivision (b), further provides: "If the principal place of administration of the trust cannot be determined under subdivision (a), it shall be determined as follows: [¶] (1) If the trust has a single trustee, the principal place of administration of the trust is the trustee's residence or usual place of business. [¶] (2) If the trust has more than one trustee, the principal place of administration of the trust is the residence or usual place of business of any of the cotrustees as agreed upon by them or, if not, the residence or usual place of business of any of the cotrustees."

Kenton provides no argument or authority that a co-trustee's attorney does not constitute a valid "representative" whose firm address may validly be used as the principal place of administration of the trust. (§ 17002, subd. (a).) But even assuming Hilja was required to list her residential or business address instead, the question is whether Kenton suffered any

---

[10]     Notably, in Kenton's objection and response statement to Hilja's 2016 petition, he acknowledged that Hilja "lives in Los Angeles," and later, in the notice section of his September 2018 petition, he listed Hilja's full Los Angeles address. (See *Germino, supra*, 107 Cal.App.4th at pp. 955–956 [strict compliance with section 16061.7, subdivision (g)(5), was not required because " '[t]he law neither does nor requires idle acts' "].)

14

prejudice from her failure to do so. (See *Germino*, *supra*, 107 Cal.App.4th at pp. 956–957.) Here, the record reflects that Hilja resides in Los Angeles, while her attorney's office is situated in Contra Costa County where the disputed trust assets and real properties are located and the instruments at issue were executed. Kenton fails to show any prejudice resulting from Hilja's listing of her attorney's office address.

Finally, Kenton argues that the probate court's order disinheriting him cannot stand because it conflicts with a previous order dismissing the September 2018 petition due to Kenton's failure to post security. We disagree, as such dismissal did nothing to imply that the petition had substantive merit. As the record demonstrates, in requiring Kenton to post security, the probate court made the determination required under Code of Civil Procedure section 391.1 that there was no reasonable probability Kenton would prevail in his pending cases, including the September 2018 petition proceeding, due to the very same statute of limitations issue discussed here. But the statements by the probate court on the possibility of Kenton refiling were premised merely on Kenton's desire to find an attorney to represent him; they did not bear on the entirely separate question of whether the September 2018 petition was "brought without probable cause." (§ 21311, subd. (a)(1).)

For the foregoing reasons, we conclude no reasonable person would believe, based on the facts known to Kenton at the time he filed his petition in September 2018, that there was a reasonable likelihood the probate court would disregard a clear statute of limitations defense barring his contest as a matter of law. Because the September 2018 petition was a direct contest

15

brought without probable cause, the probate court did not err in enforcing the no contest clause.[11]  (§ 21311, subds. (a)(1), (b).)

**DISPOSITION**

The order granting the petition to determine beneficiaries is affirmed. Hilja is entitled to her costs on appeal.

_____
Fujisaki, Acting P. J.

WE CONCUR:


_____
Petrou, J.


_____
Rodríguez, J.

*Keading v. Keading* (A159795)

---

[11]     In light of our conclusion, we need not consider Kenton's remaining arguments defending the substantive merit of his claims challenging the validity and enforceability of the October 2015 amendment.  Nor must we reach the additional questions of whether Kenton's civil complaint in the 331 action was a direct contest, and whether the compulsory cross-complaint statute (Code Civ. Proc., § 426.30) provides an independent basis to affirm the probate court's ruling that Kenton brought his trust contests without probable cause.